ROBERT LOUIS ARMSTRONG AND WIFE, VIVIAN B. ARMSTRONG; L.A. MOORE AND WIFE, E. ANN MOORE; AND WILLIAM B. CLORE AND WIFE, RAE H. CLORE, PETITIONERS v. THE LEDGES HOMEOWNERS ASSOCIATION, INC. AND THE OWNERS OF LOTS IN THE LEDGES OF HIDDEN HILLS SUBDIVISION: VIOLET M. MYERS, C. DONALD LARSSON/TRUSTEE, MARILYN BARNWELL, CHARLES S. AND CATHRYN A. HARRELL, THOMAS REIN LUGUS, JACK H. AND ROBERTA M. CRABTREE, DOROTHY LOIS SHIMON, TRUST, WILLIAM V. AND JOANN K. PHILLIPS, RICHARD AND ELIZABETH C. COOMBES, GUIDO D. AND EILEEN J. MIGIANO, EUGENE M. AND LUCRETIA B. WAGNER, JACQUELINE W. EADIE, ELIZABETH H. SCHAD, TRUST, SUNNIE TAYLOR, SUE EDELL AND T. HILLIARD STATON, ALBERT W. AND URSULA K. JENRETTE, THERESA M. WUTTKE, JOHN FITZGERALD AND ROBIN RENEE HOLSHUE, ADRIAN R. AND MARILYN B. ADES, LINDA N. ROSS, J.D. AND EDWINA S. MILLER, RUSSELL L. AND LAUNA L. SHOEMAKER, PAUL E. AND DEBORAH H. PARKER, WILLIAM SCOTT AND ELIZABETH A. CHOVAN, DAVID N. AND MELANIE D. HUTTO, TEDD M. AND JEANNIE PEARCE, JIMMIE J. AND BETTY J. REMLEY, TERRY N. AND MICHELLE L. McADOO, JOSEPH A. AND MARGARET K. DINKINS, CARLTON W. AND FRANCES A. DENCE, CLIFTON F. AND DONNA GRUBBS SAPP, MARVIN G. AND E. JOYCE KATZ; JOY N. PARISIEN, LEWIS EDWIN AND HELEN BOOKMAN, AND DENNIS R. AND DONDRA C. SETSER, RESPONDENTS

No. 640PA05

(Filed 18 August 2006)

## Deeds–restrictive covenants–amendments

Amendments to a declaration of restrictive covenants must be reasonable; reasonableness may be ascertained from the language of the declaration, deeds, and plats, together with other objective circumstances surrounding the parties' bargain, including the nature and character of the community. The amendment in this case granted the Association practically unlimited power to assess lot owners, is contrary to the original intent of the contracting parties, and is unreasonable.

Justice MARTIN did not participate in the consideration or decision of this case.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, —— N.C. App. ——, 620 S.E.2d 294 (2005), affirming a judgment granting summary judgment for respondents and denying petitioners' requests for injunctive relief signed on 20 October 2004 by Judge J. Marlene Hyatt in Superior Court, Henderson County. Heard in the Supreme Court 20 April 2006.

*Kennedy Covington Lobdell & Hickman, by Roy H. Michaux, Jr., for petitioner-appellants Robert and Vivian Armstrong.*

*Gray, Layton, Kersh, Solomon, Sigmon, Furr & Smith, P.A., by Ted F. Mitchell, for respondent-appellee The Ledges Homeowners Association, Inc., and Dungan & Associates, P.A., by Robert E. Dungan, for respondent-appellees Owners of Lots in The Ledges of Hidden Hills.*

*Jordan Price Wall Gray Jones & Carlton, PLLC, by Henry W. Jones, Jr., Hope Derby Carmichael, and Brian S. Edlin, and Wyrick Robbins Yates & Ponton, LLP, by Roger W. Knight, Counsel for Research Triangle Chapter of the Community Associations Institute, Inc., amicus curiae.*

WAINWRIGHT, Justice.

This is a declaratory judgment action brought by subdivision property owners against their homeowners' association. The dispositive question before the Court is <u>to what extent</u> the homeowners' association may amend a declaration of restrictive covenants. The parties agree that a declaration may be amended and that the subdivision in question is not subject to North Carolina's Planned Community Act, which is codified in Chapter 47F of the North Carolina General Statutes. There are no disputed questions of fact.

We hold that amendments to a declaration of restrictive covenants must be reasonable. Reasonableness may be ascertained from the language of the declaration, deeds, and plats, together with other objective circumstances surrounding the parties' bargain, including the nature and character of the community. Because we determine that the amendment to the declaration *sub judice*, which authorizes broad assessments "for the general purposes of promoting the safety, welfare, recreation, health, common benefit, and enjoyment of the residents of Lots in The Ledges as may be more specifically authorized from time to time by the Board," is unreasonable, we conclude that the amendment is invalid and unenforceable.

Petitioners own lots in The Ledges of Hidden Hills subdivision (the Ledges) in Henderson County. The Ledges was developed in 1988 by Vogel Development Corporation (Vogel) pursuant to a plat recorded in the Henderson County Public Registry. Forty-nine lots are set out along two main roads that form a Y shape. There are four *cul de sacs*. The plat designates the roads as "public roads,"

**ARMSTRONG v. LEDGES HOMEOWNERS ASS'N**

[360 N.C. 547 (2006)]

which are maintained by the State, and shows no common areas or amenities.

Before selling any lots, Vogel recorded a Declaration of Limitations, Restrictions and Uses (Declaration). The Declaration contained thirty-six provisions which restricted the lots to single family residential use; established setbacks, side building lines, minimum square footage, and architectural controls; and otherwise ensured a sanitary and aesthetically pleasing neighborhood. The Declaration emphasized that roads in the Ledges are "dedicated to public use . . . forever" and that Vogel may "dedicate the roads . . . to the North Carolina Department of Transportation." Finally, the Declaration provided for the establishment of a homeowners' association:

> The Developer [Vogel] intends to establish a non-profit corporation known as THE LEDGES OF THE HIDDEN HILLS HOME-OWNERS [sic] ASSOCIATION, and said Homeowner's [sic] Association, upon the recording of its Articles of Incorporation in the office of the Register of Deeds for Henderson County, North Carolina, shall have the right, together with the lot owners of lots within this Subdivision, either acting individually or as a group, <u>to administer and enforce the provisions of this Declaration of Restrictive Covenants as the same now exists or may hereafter from time to time be amended</u>.

(Emphasis added.) The Declaration did not contain any provision for the collection of dues or assessments, and it appears that formation of a homeowners' association was primarily intended to relieve Vogel from the ongoing responsibility to enforce the architectural control covenants.

Vogel began conveying lots in the Ledges after recording the Declaration and plat. Later, Vogel decided to construct a lighted sign on private property in the Sunlight Ridge Drive right of way. Sunlight Ridge Drive is the entry road to the Ledges. Because lighting the sign required ongoing payment of a utility bill, Vogel included the following additional language in subsequent conveyances:

> The grantor herein contemplates the establishment of a non-profit corporation to be known as The Ledges of Hidden Hills Homeowners Association, and by acceptance of this deed the grantees agree to become . and shall automatically so become members of said Homeowners Association when so formed by

said grantor; and said grantees agree to abide by the corporate charter, bylaws, and rules and regulations of said Homeowners Association and <u>agree to pay prorata [sic] charges and assessments which may be levied by said Homeowners Association when so formed.</u> Until the above contemplated Homeowners Association is formed or in the event the same is not formed, the grantor reserves the right to assess the above-described lot and the owners thereof an equal pro-rata [sic] share of the common expense <u>for electrical street lights and electrical subdivision entrance sign lights</u> and any other <u>common utility expense</u> for various lots within the Subdivision.

.(Emphasis added.) This language appears in each petitioner's deed, together with a reference to the previously recorded Declaration. Because specific language in a deed governs related general language, we determine that assessments for "common expense" for "electrical" service are the kind of assessments that the deed provides "may be levied by the Homeowners Association." *See Smith v. Mitchell*, 301 N.C. 58, 67, 269 S.E.2d 608, 614 (1980) (applying the maxim "the specific controls the general" to construction of a restrictive deed covenant). Our conclusion is supported by the deposition of Edward T. Vogel, President of Vogel Development Corporation, taken during this action. In his deposition, Mr. Vogel agreed that the assessment provision was added so that Vogel would not be responsible for paying the electric bill indefinitely.

Articles of Incorporation for the Ledges Homeowners' Association (Association) were not filed with the Secretary of State until 20 September 1994. The Articles provide that the Association is incorporated for the purposes of "upkeep, maintenance and beautification of the common amenities of [the Ledges]," "enforcement of the restrictive covenants of [the Ledges]," and "engag[ing] in any other lawful activities allowed for non-profit corporations under the laws of the State of North Carolina."

Sometime before the Association's first annual meeting in 1995, the Association's three-member Board of Directors adopted by-laws. These by-laws set forth the Association's powers and duties, which included the operation, improvement, and maintenance of common areas; determination of funds needed for operation, administration, maintenance, and management of the Ledges; collection of assessments and common expenses; and employment and dismissal of personnel.

ARMSTRONG v. LEDGES HOMEOWNERS ASS'N

[360 N.C. 547 (2006)]

Such bylaws are "administrative provisions" adopted for the "internal governance" of the Association. *Black's Law Dictionary* 193 (7th ed. 1999) [hereinafter *Black's*]. "The bylaws [of a nonprofit corporation] may contain any provision for "regulating and managing the affairs of the corporation," but no bylaw may be "<u>inconsistent with law</u>." N.C.G.S. § 55A-2-06 (2005). As explained below, in a community that is not subject to the North Carolina Planned Community Act, the powers of a homeowners' association are contractual and limited to those powers granted to it by the declaration. Therefore, to be consistent with law, an association's by-laws must necessarily also be consistent with the declaration.

At the first annual meeting, the by-laws were amended to provide that the Association would have a lien on the lot of any owner who failed to pay an assessment. Thereafter, the Association began assessing lot owners for the bills incurred for lighting the Ledges entrance sign. Additionally, the Association assessed owners for mowing the roadside on individual private lots along Sunlight Ridge Drive, for snow removal from subdivision roads, and for operating and legal expenses. By affidavit submitted in support of petitioners' motion for summary judgment, petitioner Vivian Armstrong stated that the annual electrical bill for the sign is less than sixty cents per lot per month or approximately seven dollars and twenty cents per year; however, the Association has billed lot owners total assessments of approximately eighty to one hundred dollars per year.

On 18 June 2003, Armstrong sent an e-mail to the President of the Association, Marvin Katz, challenging the validity of these assessments:

Since purchasing property here, we've received two invoices from the Ledges homeowner's [sic] association. In good faith, we relied upon the representation that the money was legitimately owed. We've recently learned that the nature of the homeowner's [sic] association has been misrepresented. Therefore, we ask for a full and immediate refund of $160.

Armstrong requested that the matter be placed on the agenda of the officers' next meeting.

At a meeting held on 16 July 2003, the board amended the Association by-laws again, greatly expanding the entity's enumerated powers and duties. In particular, the amended by-laws provided that the Association shall have the power to "[i]mpose charges for late

payment of assessments and, after notice and an opportunity to be heard, levy reasonable fines not to exceed One Hundred Fifty Dollars ($150.00) per violation (on a daily basis for continuing violations) of the Restrictive Covenants, Bylaws, and Rules and Regulations of the Association pursuant to Section 47F-3-107.1 of the North Carolina Planned Community Act." Several additional amended provisions also referenced the Planned Community Act.

On 1 August 2003, petitioners Robert and Vivian Armstrong sent a letter to the Association requesting termination of their membership. On 8 August 2003, petitioners L.A. and E. Ann Moore requested termination of their Association membership as well. In their letter, the Moores stated:

> We chose this particular property last year for several reasons. After a thorough search of Western North Carolina and the Hendersonville/Brevard area, in particular, we decided expressly against living in a gated community with "all the amenities." Golf courses, swimming pools and clubhouses are not our choice for daily living. Walking trails, while enjoyable and convenient, are but another source of assessment we don't need.

> The Ledges appeared to be the answer to our desires, and until recent events we've been sure of it. The current Covenants are more restrictive than any other area in which we've resided, but not unreasonably so. While receptive to OPEN discussion of a small change or two, we are adamant in our opposition to the expressed plan of The Board to turn us into a Planned Community.

(Emphasis added.)

On 17 October 2003, petitioners filed a declaratory judgment action in Superior Court, Henderson County, seeking, among other relief, a declaration that the Ledges is not a "planned community" as defined by N.C.G.S. § 47F-1-103 (23) and that the amended by-laws are unenforceable. Thereafter, on 20 November 2003, the Ledges' Board of Directors amended the Association by-laws to omit any reference to North Carolina's Planned Community Act.

On 24 November 2003, a majority of the Association members adopted "Amended and Restated Restrictive Covenants of the Ledges of the Hidden Hills" (Amended Declaration). The Amended Declaration contains substantially different covenants from the originally recorded Declaration, including a clause requiring Association

ARMSTRONG v. LEDGES HOMEOWNERS ASS'N

[360 N.C. 547 (2006)]

membership, a clause restricting rentals to terms of six months or greater, and clauses conferring powers and duties on the Association which correspond to the powers and duties previously adopted in the Association's amended by-laws.

Additionally, the Amended Declaration imposes new affirmative obligations on lot owners. It contains provisions authorizing the assessment of fees and the entry of a lien against any property whose owner has failed to pay assessed fees for a period of ninety days. According to the Amended Declaration, such fees are to be "assessed for common expenses" and "shall be used for the general purposes of promoting the safety, welfare, recreation, health, common benefit, and enjoyment of the residents of Lots in The Ledges as may be more specifically authorized from time to time by the Board." Special assessments may be made if the annual fee is inadequate in any year; however, surplus funds are to be retained by the Association. Unpaid assessments bear twelve percent interest per annum.

Petitioners amended their complaint in early December 2003 to reflect the November changes to the Association by-laws and original Declaration. Petitioners asserted five claims for relief, seeking: (1) a declaration that the Ledges is not subject to the Planned Community Act, (2) a declaration that the amended Association by-laws are invalid and unenforceable, (3) a declaration that lot owners are not required to join the Association or otherwise be bound by actions of the Association, (4) a declaration that the Amended Declaration is invalid and unenforceable, and (5) a permanent injunction preventing the Association from enforcing the amended by-laws or recording the Amended Declaration. In their answer to the amended complaint, respondents admitted that neither the amended by-laws nor the Amended Declaration subjected the Ledges to North Carolina's Planned Community Act.[1]

Both petitioners and respondents moved for summary judgment, submitting multiple affidavits and exhibits in support of their positions. Following a hearing, the trial court granted respondents' motion for summary judgment, denied petitioners' motion for summary judgment, and dismissed petitioners' claims with prejudice. In

---

1. N.C.G.S. § 47F-1-103(23) (2005) defines a planned community as "real estate with respect to which any person, by virtue of that person's ownership of a lot, is expressly obligated by a declaration to pay real property taxes, insurance premiums, or other expenses to maintain, improve, or benefit other lots or other real estate described in the declaration." The Planned Community Act does not apply to any community that does not meet this definition.

so doing, the court found that the Amended Declaration was valid and enforceable. Petitioners then appealed to the North Carolina Court of Appeals.

The Court of Appeals determined that the plain language of the Declaration is sufficient to support any amendment thereto made by a majority vote of Association members, noting "the declaration provides, 'that any portion of the restrictive covenants may be released, changed, modified or amended by majority vote of the then property owners within this Subdivision.' " *Armstrong v. Ledges Homeowners Ass'n,* —— N.C. App. ——, ——, 620 S.E.2d 294, 297 (2005). The court further concluded that

> [p]roviding for mandatory membership in the [A]ssociation and permitting the [A]ssociation to assess and collect fees from the [A]ssociation's members is not clearly outside the intention of the original restrictive covenants and is generally consistent with the rights and obligations of lot owners of subdivisions subject to restrictive covenants and homeowners' associations.

*Id.* at ——, 620 S.E.2d at 298. Accordingly, the Court of Appeals affirmed the trial court's order of summary judgment in favor of respondents.

Robert and Vivian Armstrong then filed a petition for discretionary review in this Court, arguing that the Court of Appeals erred by determining that the scope of the disputed amendment does not exceed the authority granted to the Association in the covenants contained in the original Declaration. Petitioners did not seek discretionary review of remaining issues resolved by the Court of Appeals. This Court granted the Armstrongs' petition on 26 January 2006.

The word covenant means a binding agreement or compact benefitting both covenanting parties. *See generally Black's* 369; *The American Heritage Dictionary of the English Language* 432 (3rd ed. 1992) [hereinafter *Heritage*]; *Random House Webster's College Dictionary* 314 (1991) [hereinafter *Webster's*]. A covenant represents a meeting of the minds and results in a relationship that is not subject to overreaching by one party or sweeping subsequent change.

Covenants accompanying the purchase of real property are contracts which create private incorporeal rights, meaning non-possessory rights held by the seller, a third-party, or a group of people, to use or limit the use of the purchased property. *See Wise v. Harrington Grove Cmty. Ass'n,* 357 N.C. 396, 401, 584 S.E.2d 731,

735-36 (2003) (stating that courts will enforce a real covenant in the same manner as any other contract); *Karner v. Roy White Flowers, Inc.*, 351 N.C. 433, 436, 527 S.E.2d 40, 42 (2000) (stating that covenants create incorporeal rights); Robert G. Natelson, *Law of Property Owners Associations* §§ 2.1, 2.3.3.1 (1989) (discussing the characteristics of servitudes and contractual servitudes) [hereinafter *Law of Associations*]. Real covenants "run with the land," creating a servitude on the land subject to the covenant. *Runyon v. Paley*, 331 N.C. 293, 299-300, 416 S.E.2d 177, 182-83 (1992) (explaining that a restrictive covenant is a real covenant if "(1) the subject of the covenant touches and concerns the land, (2) there is privity of estate between the party enforcing the covenant and the party against whom the covenant is being enforced, and (3) the original covenant-ing parties intended the benefits and burdens of the covenant to run with the land") (emphasis added). An enforceable real covenant is made in writing, properly recorded, and not violative of public policy. *J. T. Hobby & Son, Inc. v. Family Homes of Wake Cty, Inc.*, 302 N.C. 64, 71, 274 S.E.2d 174, 179 (1981) (Real covenants may not offend "articulated considerations of public policy or concepts of substantive law."); *Cummings v. Dosam, Inc.*, 273 N.C. 28, 32, 159 S.E.2d 513, 517 (1968) (stating that real covenants must be in writing); *Hege v. Sellers*, 241 N.C. 240, 248, 84 S.E.2d 892, 898 (1954) (stating that real covenants must be recorded).

Real covenants are either restrictive or affirmative. Classic restrictive covenants include covenants limiting land use to single family residential purposes and establishing setback and side building line requirements. Affirmative covenants impose affirmative duties on landowners, such as an obligation to pay annual or special assessments for the upkeep of common areas and amenities in a common interest community.

Because covenants originate in contract, the primary purpose of a court when interpreting a covenant is to give effect to the original intent of the parties; however, covenants are strictly construed in favor of the free use of land whenever strict construction does not contradict the plain and obvious purpose of the contracting parties. *Long v. Branham*, 271 N.C. 264, 268, 156 S.E.2d 235, 238 (1967) ("[T]he fundamental rule is that the intention of the parties governs" construction of real covenants.). *But see Wise*, 357 N.C. at 404, 584 S.E.2d at 737 (When a covenant infringes on common law property rights, " '[a]ny doubt or ambiguity will be resolved against the validity of the restriction.' " (quoting *Cummings*, 273 N.C. at 32, 159

S.E.2d at 517)); *J. T. Hobby & Son, Inc.*, 302 N.C. at 71, 274 S.E.2d at 179 ("The rule of strict construction is grounded in sound considerations of public policy: It is in the best interests of society that the free and unrestricted use and enjoyment of land be encouraged to its fullest extent."). Moreover, the North Carolina Court of Appeals has held that affirmative covenants are unenforceable "unless the obligation [is] imposed in clear and unambiguous language which is sufficiently definite to guide the courts in its application." *Beech Mountain Prop. Owner's Ass'n v. Seifart*, 48 N.C. App. 286, 288, 295-96, 269 S.E.2d 178, 179-80, 183 (1980) (concluding that covenants requiring an assessment for " 'road maintenance and maintenance of the trails and recreational areas,' " " 'road maintenance, recreational fees, and other charges assessed by the Association,' " and " 'all dues, fees, charges, and assessments made by that organization, but not limited to charges for road maintenance, fire protection, and security services' " were not sufficiently definite and certain to be· enforceable); *see also Allen v. Sea Gate Ass'n*, 119 N.C. App. 761, 764-65, 460 S.E.2d 197, 199-200 (1995) (holding that a covenant requiring an assessment " 'for the maintenance, upkeep and operations of the various areas and facilities by Sea Gate Association, Inc.' " was void because there was no standard by which a court could assess how the Association chooses the properties to maintain); *Snug Harbor Prop. Owners Ass'n v. Curran*, 55 N.C. App. 199, 203-04, 284 S.E.2d 752, 755 (1981) (holding that covenants requiring owners to pay an annual fee for the " '[m]aintenance and improvement of Snug Harbor and its appearance, sanitation, easements, recreation areas and parks' " and " '[f]or the maintenance of the recreation area and park' " were not enforceable because there was "no standard by which the maintenance [was] to be judged"), *disc. rev. denied*, 305 N.C. 302, 291 S.E.2d 151 (1982). *But see Figure Eight Beach Homeowners' Ass'n v. Parker*, 62 N.C. App. 367, 371, 377, 303 S.E.2d 336, 339, 342 (concluding that a covenant authorizing an assessment for " '[m]aintaining, operating and improving the bridges; protection of the property from erosion; collecting and disposing of garbage, ashes, rubbish and the like; maintenance and improvement of the streets, roads, drives, rights of way, community land and facilities, tennis courts, marsh and waterways; employing watchmen; enforcing these restrictions; and, in addition, doing any other things necessary or desirable in the opinion of the Company to keep the property in neat and good order and to provide for the health, welfare and safety of owners and residents of Figure Eight Island' " was enforceable because the purpose of the assessment was described with sufficient particularity), *disc. rev.*

**ARMSTRONG v. LEDGES HOMEOWNERS ASS'N**

[360 N.C. 547 (2006)]

*denied,* 309 N.C. 320, 307 S.E.2d 170 (1983). The existence of definite and certain assessment provisions in a declaration does not imply that subsequent additional assessments were contemplated by the parties, and courts are " 'not inclined' " to read covenants into deeds when the parties have left them out. *See Wise,* 357 N.C. at 407, 584 S.E.2d at 739-40 (quoting *Hege,* 241 N.C. at 249, 84 S.E.2d at 899).

Developers of subdivisions and other common interest communities establish and maintain the character of a community, in part, by recording a declaration listing multiple covenants to which all community residents agree to abide. *See generally* Law of Associations, § 2.4 (discussing servitudes and the subdivision declaration). Lot owners take their property subject to the recorded declaration, as well as any additional covenants contained in their deeds. Because covenants impose continuing obligations on the lot owners, the recorded declaration usually provides for the creation of a homeowners' association to enforce the declaration of covenants and manage land for the common benefit of all lot owners, thereby preserving the character of the community and neighborhood property values. *Id.* § 3.1 (discussing distinguishing characteristics of the property owners' association). In a community that is not subject to the North Carolina Planned Community Act, the powers of a homeowners' association are contractual and are limited to those powers granted to it by the declaration. *Wise,* 357 N.C. at 401, 584 S.E.2d at 736 ("[U]nder the common law, developers and lot purchasers were free to create almost any permutation of homeowners association the parties desired."). *Cf.* N.C.G.S. § 47F-3-102 (2005) (enumerating the powers of a planned community's homeowners association); *id.* § 47F-1-102, N.C. cmt. (2005) (naming powers that may apply retroactively to planned communities created before the effective date of the Act). Although individual lot owners may voluntarily undertake additional responsibilities that are not set forth in the declaration, or undertake additional responsibilities by mistake, lot owners are not contractually bound to perform or continue to perform such tasks.

Declarations of covenants that are intended to govern communities over long periods of time are necessarily unable to resolve every question or community concern that may arise during the term of years. *See* 2 James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 18-10, at 858 (Patrick K. Hetrick & James B. McLaughlin, Jr., eds., 5th ed. 1999) (noting that a homeowners' association often takes over service and maintenance responsibilities from the developer in a planned transfer to ensure continuation of

these operations in the future). This is especially true for luxury communities in which residents enjoy multiple common areas, private roads, gates, and other amenities, many of which are staffed and maintained by third parties. *See* Patrick K. Hetrick, Wise v. Harrington Grove Community Association, Inc.: *A Pickwickian Critique: The North Carolina Planned Community Act Revisited*, 27 Campbell L. Rev. 139, 171-73 (2005) (comparing the administrative and legal needs of a modest subdivided hypothetical neighborhood, "Homeplace Acres," with those of a hypothetical "upscale residential land development," "Sweet Auburn Acres"). For this reason, most declarations contain specific provisions authorizing the homeowners' association to amend the covenants contained therein.

The term amend means to improve, make right, remedy, correct an error, or repair. *See generally Black's* at 80; *Heritage* at 44; *Webster's* at 59. Amendment provisions are enforceable; however, such provisions give rise to a serious question about the permissible scope of amendment, which results from a conflict between the legitimate desire of a homeowners' association to respond to new and unanticipated circumstances and the need to protect minority or dissenting homeowners by preserving the original nature of their bargain. *See Wise,* 357 N.C. at 401, 584 S.E.2d at 736 ("A court will generally enforce [real] covenants ' "to the same extent that it would lend judicial sanction to any other valid contractual relationship." ' " (quoting *Karner,* 351 N.C. at 436, 527 S.E.2d at 42 (citation omitted)); *see also* 2 Restatement (Third) of Property: Servitudes § 6 Introductory Note at 71 (2000) ("The law should facilitate the operation of common interest communities at the same time as it protects their long-term attractiveness by protecting the legitimate expectations of their members.") (emphasis added). In the same way that the powers of a homeowners' association are limited to those powers granted to it by the original declaration, an amendment should not exceed the purpose of the original declaration.

In the case *sub judice,* petitioners argue that the affirmative covenants contained in their deeds authorize only nominal assessments for the maintenance of a lighted sign at the subdivision entrance; thus, the Association's subsequent amendment of the Declaration to authorize broad general assessments to "promot[e] the safety, welfare, recreation, health, common benefit, and enjoyment of the residents of Lots in The Ledges as may be more specifically authorized from time to time by the Board" is invalid and unenforceable. Respondents contend that the Declaration of Restrictive

ARMSTRONG v. LEDGES HOMEOWNERS ASS'N

[360 N.C. 547 (2006)] ·

Covenants expressly permits the homeowners' association to amend the covenants; thus, any amendment that is adopted in accordance with association by-laws and is neither illegal nor against public policy is valid and enforceable, regardless of its breadth or subject matter. We hold that a provision authorizing a homeowners' association to amend a declaration of covenants does not permit amendments of unlimited scope; rather, every amendment must be reasonable in light of the contracting parties' original intent.[2]

A disputing party will necessarily argue that an amendment is reasonable if he believes that it benefits him and unreasonable if he believes that it harms him. However, the court may ascertain reasonableness from the language of the original declaration of covenants, deeds, and plats, together with other objective circumstances surrounding the parties' bargain, including the nature and character of the community. For example, it may be relevant that a particular geographic area is known for its resort, retirement, or seasonal "snowbird" population. Thus, it may not be reasonable to retroactively prohibit rentals in a mountain community during ski season or in a beach community during the summer. Similarly, it may not be reasonable to continually raise assessments in a retirement community where residents live primarily on a fixed income. Finally, a homeowners' association cannot unreasonably restrict property rental by implementing a garnishment or "taking" of rents (which is essentially an assessment); although it may be reasonable to restrict

---

2. A number of other states considering amendments to the founding documents of common interest communities have also applied a reasonableness standard. *See Hutchens v. Bella Vista Vill. Prop. Owners' Ass'n*, 82 Ark. App. 28, 37, 110 S.W.3d 325, 330 (2003) (concluding "the power of . . . [a] homeowner's [sic] association . . . to make rules, regulations, or amendments to its declaration or bylaws is limited by a determination of whether the action is unreasonable, arbitrary, capricious, or discriminatory"); *Holiday Pines Prop. Owners Ass'n v. Wetherington*, 596 So. 2d 84, 87 (Fla. Dist. Ct. App. 1992) (per curiam) ("In determining the enforceability of an amendment to restrictive covenants, the test is one of reasonableness."); *Zito v. Gerken*, 225 Ill. App. 3d 79, 81, 587 N.E.2d 1048, 1050 (1992) ("A restrictive covenant which has been modified, altered or amended will be enforced if it is clear, unambiguous and reasonable."); *Buckingham v. Weston Vill. Homeowners Ass'n*, 1997 ND 237, ¶10, 571 N.W.2d 842, 844 (A condominium association's amendment to the declaration or bylaws "must be reasonable" and "a rule which is unreasonable, arbitrary, or capricious is invalid."); *Worthinglen Condo. Unit Owners' Ass'n v. Brown*, 57 Ohio App. 3d 73, 75-76, 566 N.E.2d 1275, 1277 (1989) (adopting "the reasonableness test, pursuant to which the validity of condominium rules is measured by whether the rule is reasonable under the surrounding circumstances"); *Shafer v. Bd. of Trs. of Sandy Hook Yacht Club Estates, Inc.*, 76 Wash. App. 267, 273-74, 883 P.2d 1387, 1392 (1994) (a covenant amendment "respecting the use of privately-owned property is valid, provided that such power is exercised in a reasonable manner consistent with the general plan of the development"), *disc. rev. denied*, 127 Wash. 2d 1003, 898 P.2d 308 (1995).

the frequency of rentals to prevent rented property from becoming like a motel.

Correspondingly, restrictions are generally enforceable when clearly set forth in the original declaration. Thus, rentals may be prohibited by the original declaration. In this way, the declaration may prevent a simple majority of association members from turning established non-rental property into a rental complex, and vice-versa.

In all such cases, a court reviewing the disputed declaration amendment must consider both the legitimate needs of the homeowners' association and the legitimate expectations of lot owners. A court may determine that an amendment is unreasonable, and, therefore, invalid and unenforceable against existing owners who purchased their property before the amendment was passed; however, the same court may also find that the amendment is binding as to subsequent purchasers who buy their property with notice of a recorded amended declaration.

Here, petitioners purchased lots in a small residential neighborhood with public roads, no common areas, and no amenities. The neighborhood consists simply of forty-nine private lots set out along two main roads and four cul de sacs. Given the nature of this community, it makes sense that the Declaration itself did not contain any affirmative covenants authorizing assessments. Neither the Declaration nor the plat shows any source of common expense.

Although petitioners' deeds contain an additional covenant requiring lot owners to pay a pro rata share of the utility bills incurred from lighting the entrance sign, it is clear from the language of this provision, together with the Declaration, the plat, and the circumstances surrounding installation of the sign, that the parties did not intend this provision to confer unlimited powers of assessment on the Association. The sole purpose of this additional deed covenant was to ensure that the developer did not remain responsible for lighting the entrance sign after the lots were conveyed. Payment of the utility bill is the single shared obligation contained in petitioners' deeds, and each lot owner's pro rata share of this expense totals approximately seven dollars and twenty cents per year.

For these reasons, we determine that the Association's amendment to the Declaration which authorizes broad assessments "for the general purposes of promoting the safety, welfare, recreation, health, common benefit, and enjoyment of the residents of Lots in The

Ledges as may be more specifically authorized from time to time by the Board" is unreasonable. The amendment grants the Association practically unlimited power to assess lot owners and is contrary to the original intent of the contracting parties. Indeed, the purposes for which the Association has billed additional assessments of approximately eighty to one hundred dollars per year are unrelated to all other provisions of the deeds, Declaration, and plat: for example, assessments for mowing land that the plat clearly designates as private property and assessments for snow removal from roads that the plat clearly designates as public.

For the reasons stated above, we conclude that the disputed amendment is invalid and unenforceable. In so doing, we echo the rationale of the Supreme Court of Nebraska in *Boyles v. Hausmann*, 246 Neb. 181, 191, 517 N.W.2d 610, 617 (1994): "The law will not subject a minority of landowners to unlimited and unexpected restrictions on the use of their land merely because the covenant agreement permitted a majority to make changes in existing covenants." Here, petitioners purchased their lots without notice that they would be subjected to additional restrictions on use of the lots and responsible for additional affirmative monetary obligations imposed by a homeowners' association. This Court will not permit the Association to use the Declaration's amendment provision as a vehicle for imposing a new and different set of covenants, thereby substituting a new obligation for the original bargain of the covenanting parties. Accordingly, we reverse the opinion of the North Carolina Court of Appeals and remand this case to that court for further remand to the trial court for additional proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

Justice MARTIN did not participate in the consideration or decision of this case.