NO. COA13-1116

NORTH CAROLINA COURT OF APPEALS

Filed:  1 July 2014

ANN B. WALLACH; DAVID WALLACH;
PHILIP C. MILLER and STEEN
CONSTRUCTION COMPANY,
      Plaintiffs,

      v.                                    Wake County
                                            No. 12 CVS 11131
LINVILLE OWNERS ASSOCIATION, INC.;
WILLIAM BUFF CLAYTON; JAMES B.
CUSHMAN; KIRSTEN M. CUSHMAN; DALIP
AWASTHI; MONICA AWASTHI; WILLIAM
J. SPARKMAN; ROXANNE E. SPARKMAN;
RAJESH K. MANICKAM; REEMA PATEL
MANICKAM; MARGARET S. NORTON,
Trustee of Margaret S. Norton
Revocable Living Trust dated 12-4-
2007; STUART P. GOLDBLATT; N.C.
PEAKS, LLC; FELICIA R. KADIS;
MATTHEW C. KING, JR.; JAMES A.
WILLETTS; LINDA BADDOUR; CLAUDE Z.
DEMBY; DONNA H. DEMBY; ROBERT D.
HILLMANN; SUSAN L. HILLMANN; SHAWN
M. BRITT; AARON VEDDER; MICHELLE
VEDDER; TODD R. STIEFEL; DIANA G.
STIEFEL; SCOTT J. POOLE; MATTHEW
S. PALKA, JR.; FRANCES K.
O'SULLIVAN; KEITH THOMAS SHELLY;
KATHARINE KNOBIL; JOSIP CERMIN;
LANTY L. SMITH; MARGARET G. SMITH;
SCOTT ALLEN BROWN; SARA BETH
BROWN; MASOUD MOGHADASS; MARIA D.
CLARK and CHRISTOPHER JAMES CLARK,
Trustees of the Maria D. Clark
Living Trust dated September 17,
2010, and any amendments thereto;
PABLO E. PRIU; HEIDI D. PRIU;
SHEHZAD H. CHOUDRY; SABEEN J.
KHAWAJA; JASON L. PAYTON; AMIR A.
FIROZVI; ASRA S. FIROZVI; CHARLES
STIEFEL; DANEEN STIEFEL; MARK F.
KOZACKO; TAMMY Y. KOZACKO; MARK A.

REIN; TARA A. DOW-REIN; MOHIT PASI; SONIA PASI; WILLIAM H. SCHEICK, JR., Trustee of the Carolyn R. Scheick Revocable Trust-1994/TR; CAROLYN R. SCHEICK, Trustee of the William H. Scheick Revocable Trust-1994/TR; JOHN T. SCHEICK, Trustee of the Gloria M. Verrochi Irrevocable Trust-1994; CAROLYN R. SCHEICK, Trustee of the Gloria M. Verrochi Irrevocable Trust-1994; JOHN T. SCHEICK, Trustee of the Gloria M. Verrochi Revocable Trust 1994 GST Exemption Trust; CAROLYN R. SCHEICK, Trustee of the Gloria M. Verrochi Revocable Trust 1994 GST Exemption Trust; STEVEN KJELLBERG; JULIE KJELLBERG; RICHARD P. MCCOOK; ANNA T. MCCOOK; IMAD OMAR; PAUL F. BONAVITA; HEATEHR S. BONAVITA; DIMITRI LYSANDER STOCKTON; RENEE CECILE ALLAIN-STOCKTON,
    Defendants.


Appeals by plaintiffs and defendant from final judgment entered 12 March 2013 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 19 February 2014.

> *Harris & Hilton, P.A., by Nelson G. Harris, for plaintiff-appellants.*

> *Jordan Price Wall Gray Jones & Carlton, by Brian S. Edlin and J. Matthew Waters, for defendant-appellant.*


McCULLOUGH, Judge.

Linville Owners Association, Inc. (the "Association"),

appeals the trial court's denial of its motion to dismiss for failure to join necessary parties. Ann B. Wallach and David Wallach, the owners of Lot 40 and Lot 46 in Linville Subdivision, and Steen Construction Company, the owner of Lot 44 in Linville Subdivision (together "plaintiffs"), appeal the trial court's grant of partial summary judgment and award of attorneys' fees in favor of the Association. For the following reasons, we affirm the denial of the Association's motion to dismiss and reverse the grant of partial summary judgment and the award of attorneys' fees.

## I.   Background

This case concerns amendments to the Declaration of Covenants, Conditions, Easements and Restrictions (the "Declaration") for Linville Subdivision, a gated community in North Raleigh.

The Declaration was first recorded in the Wake County Register of Deeds on page 197 of book 10362 on 13 August 2003. It was then re-recorded in the Wake County Register of Deeds on page 2198 of book 11283 on 29 March 2005 to include an exhibit that was inadvertently omitted during the first recording. Prior to June 2005, the Declaration governed only those lots in "phase one" of Linville Subdivision. However, on 9 June 2005, a

supplementary declaration was recorded in the Wake County Register of Deeds on page 2201 of book 11483 subjecting additional land, "phase two" of Linville Subdivision, to the terms of the Declaration. At all times relevant to this appeal, the Declaration governed all forty-four lots comprising phases one and two of Linville Subdivision.[1]

Between October and December of 2011, amendments to the Declaration were recorded in the Wake County Register of Deeds. The amendments revised or added the following provisions: "Subdividing and Recombination of Lots," "Architectural Control," "Performance Bond and Builder Agreement," and "Date of Commencement of Annual Assessment." Particularly relevant to this appeal, the amendment regarding "Date of Commencement of Annual Assessment" (the "Assessment Amendment") was recorded in the Wake County Register of Deeds on page 2295 of book 14530 on 7 November 2011.

On 6 August 2012, plaintiffs and Philip C. Miller, all of whom owned vacant lots in Linville Subdivision, commenced this action by filing a complaint seeking a declaratory judgment that the amendments to the Declaration were invalid and

---

[1]The lots in Linville Subdivision are numbered 1 through 46. Lots 15 and 18 were eliminated by consolidation with other lots.

unenforceable. The Association and all other lot owners at the time the suit was filed were named as defendants.

In order to provide notice of the action to those acquiring title to lots in Linville Subdivision following commencement of the action, plaintiffs filed a lis pendens in Wake County Superior Court on 17 September 2012.

The lis pendens, however, did not provide notice of the action to James B. Cushman, II, and Kirsten M. Cushman, who acquired title to Lot 2 from Capital Bank in the time between the commencement of this action and the filing of the lis pendens. As a result, on 29 September 2012, plaintiffs filed a motion to amend the complaint to substitute the Cushmans as defendants.

Thereafter, on 4 October 2012, Jordan L. Staal and Heather Staal acquired title to Lot 26 from Masoud Moghadass with notice of the pending action via the lis pendens. Plaintiffs never sought to substitute the Staals as defendants.

By order filed 5 November 2012, the trial court allowed plaintiffs' motion to amend the complaint to substitute the Cushmans as defendants. Plaintiffs then filed a second lis pendens naming the Cushmans as owners of Lot 2 on 7 November 2012.

On 8 November 2012, plaintiffs moved for summary judgment on the ground that the amendments were not reasonable, exceeded the purpose of the original Declaration, and were inconsistent with the original intent of the Declaration. The Association responded on 13 November 2012 by moving to quash the lis pendens as unnecessary and moving to dismiss the complaint pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(7) for failure to join the Staals, whom the Association argues are necessary parties.

By order filed 14 December 2012, the trial court denied the Association's motion to dismiss and continued the hearing on plaintiffs' motion for summary judgment. The trial court concluded,

> All owners in the subdivision are not necessary parties to this action by virtue of the Lis Pendens filed by the Plaintiffs. Properties in the Linville Subdivision may be freely bought and sold without new owners having to be parties to the action and all owners at the time of the final judgment in this case are bound by the final judgment in this case even though they are not named parties to this action.

Following the denial of its motion to dismiss, the Association filed an answer and counterclaim on 31 December 2012. In the counterclaim, the Association sought to collect unpaid assessments owed by plaintiffs, foreclose on Claims of Lien filed and served on plaintiffs' lots to secure payment of

the assessments, and collect attorneys' fees incurred in prosecuting the action.

On 4 February 2013, the Association filed a motion for summary judgment on plaintiffs' claims. Also on 4 February 2013, plaintiffs filed a response to the Association's counterclaim arguing no past due assessments were owed because the amendments to the declaration were invalid and unenforceable.

Plaintiffs' and the Association's motions for summary judgment came on for hearing in Wake County Superior Court before the Honorable Paul Ridgeway on 18 February 2013. On 4 March 2013, the trial court entered an order granting summary judgment in part and denying summary judgment in part. Pertinent to this appeal, the trial court determined the Assessment Amendment was valid and enforceable. The trial court further concluded that the Association's counterclaim was the only remaining matter to be tried.

Thereafter, the Associations' counterclaim came on for trial that same week in Wake County Superior Court, the Honorable Donald Stephens, Judge presiding. Following trial, the trial court entered judgment in favor of the Association, ordering the Wallachs to pay $5,010 in unpaid assessments for

Lots 40 and 46 and ordering Steen Construction Company to pay $2,345 in unpaid assessments for Lot 44. The trial court further ordered that a Commissioner be appointed and directed to sell the lots to satisfy the indebtedness due the Association. The issue of attorneys' fees was reserved until the Association's counsel filed a supplemental affidavit.

Following receipt of the supplemental affidavit, on 25 March 2013, the trial court awarded $5,000 in fees to the Association.

Plaintiffs gave notice of appeal on 10 April 2013. The Association gave notice of appeal on 11 April 2013.

## II.  Discussion

We address the Association's appeal first, followed by plaintiffs' appeal. The Association appeals the trial court's denial of its motion to dismiss. Plaintiffs appeal the trial court's partial summary judgment order finding the Assessment Amendment valid and enforceable and the trial court's order awarding the Association attorneys' fees.

### Association's Appeal

In the Association's appeal, the sole issue is whether the trial court erred in denying the Association's motion to dismiss

for failure to join necessary parties.  Upon review, we hold the trial court did not err in denying the Association's motion.

"'A necessary party is one who is so vitally interested in the controversy that a valid judgment cannot be rendered in the action completely and finally determining the controversy without his presence.'" *Warrender v. Gull Harbor Yacht Club, Inc.*, _ N.C. App. _, _, 747 S.E.2d 592, 606 (2013) (quoting *Carding Developments v. Gunter & Cooke*, 12 N.C. App. 448, 451–52, 183 S.E.2d 834, 837 (1971)).  "'The term "necessary parties" embraces all persons who have or claim material interests in the subject matter of a controversy, which interests will be directly affected by an adjudication of the controversy.'"  *N.C. Dep't of Transp. v. Stagecoach Village*, 174 N.C. App. 825, 827-28, 622 S.E.2d 142, 144 (2005) (quoting *Wall v. Sneed*, 13 N.C. App. 719, 724, 187 S.E.2d 454, 457 (1972)) (citation omitted in the original), *disc. rev. denied*, 360 N.C. 483, 630 S.E.2d 929 (2006).  Pursuant to the North Carolina Rules of Civil Procedure, necessary parties "must be joined as plaintiffs or defendants[.]"  N.C. Gen. Stat. § 1A-1, Rule 19(a) (2013).

On the other hand, "[a] proper party is one whose interest may be affected by a decree, but whose presence is not essential in order for the court to adjudicate the rights of others."

*Stagecoach Village*, 174 N.C. App. at 828, 622 S.E.2d at 144. "'Proper parties *may* be joined. Whether proper parties will be ordered joined rests within the sound discretion of the trial court.'" *DeRossett v. Duke Energy Carolinas, LLC*, 206 N.C. App. 647, 660, 698 S.E.2d 455, 464 (2010) (citations omitted) (emphasis in original).

On appeal, the Association claims the trial court erred in denying its motion to dismiss because the Staals, who acquired Lot 26 on 4 October 2012, were not named defendants in the action. Relying on *Karner v. Roy White Flowers, Inc.*, 351 N.C. 433, 527 S.E.2d 40 (2000) and *Page v. Bald Head Ass'n.*, 170 N.C. App. 151, 611 S.E.2d 463, *disc. rev. denied*, 359 N.C. 635, 616 S.E.2d 542 (2005), the Association argues all lot owners in Linville Subdivision were necessary parties, without which the judgments are null and void. *See McCraw v. Aux*, 205 N.C. App. 717, 721, 696 S.E.2d 739, 741 (2010).

In *Karner*, our Supreme Court held nonparty property owners in a Charlotte subdivision were necessary parties to an action to enjoin a property owner from violating a residential use restrictive covenant running with each lot. *Karner*, 351 N.C. at 440, 527 S.E.2d at 44. The Court reasoned,

> each property owner within Elizabeth Heights
> has the right to enforce the residential

restriction against any other property owner seeking to violate that covenant. This right has a "distinct worth." By operation of law, if the residential restrictive covenant is abrogated as to the lots owned by defendants, each property owner within the subdivision would lose the right to enforce that same restriction. Unless those parties are joined, they will not have been afforded their "day in court." An adjudication that extinguishes property rights without giving the property owner an opportunity to be heard cannot yield a "valid judgment." For this reason, we conclude the nonparty property owners of Elizabeth Heights are necessary parties to this action because the voiding of the residential-use restrictive covenant would extinguish their property rights.

*Id*. at 439-40, 527 S.E.2d at 44 (citations omitted).

Thereafter, in *Page* this Court affirmed the trial court's dismissal of an assessment claim for failure to join all property owners. *Page*, 170 N.C. App. at 154, 611 S.E.2d at 465. In affirming the trial court in *Page*, this Court simply cited *Karner* for the holding that "all property owners affected by a residential use restrictive covenant were necessary parties to an action to invalidate that covenant[]" and indicated the plaintiffs acknowledged *Karner* controlled their case. *Id*. Thus, this Court found the plaintiffs' argument meritless. *Id*.

The Association now claims *Karner* and *Page* control the present case. We, however, find the present case distinguishable.

In *Midsouth Golf, LLC v. Fairfield Harbourside Condo. Ass'n., Inc.*, 187 N.C. App. 22, 652 S.E.2d 378 (2007) this Court distinguished a covenant for the payment of recreational amenity fees from the residential use restriction at issue in *Karner*. This Court explained that, whereas a residential use restrictive covenant included in all deeds conveying lots in a subdivision according to a common plan of development was a valuable property right enforceable by all property owners,

> only the owner of the recreational amenities [in *Midsouth Golf*] ha[d] the power to levy such a recreational amenity charge. As such, only the owner of the recreational amenities ha[d] the power to enforce [the] restrictive covenant. None of the property owners within Fairfield Harbour ha[d] the right to enforce the covenant to pay amenity fees against any of the other owners. Accordingly, the extinguishment of the restrictive covenant in [*Midsouth Golf*] would not deprive the other property owners of any property right akin to the right that the nonparty property owners were deprived of in *Karner*.

*Id*. at 28-29, 652 S.E.2d at 383. In *Midsouth Golf*, this Court also addressed its decision in *Page*, indicating it could not rely upon *Page* because "*Page* does not reveal sufficient facts for us to determine whether the covenant at issue was similar to the one at issue in the present case." *Id*. at 29, 652 S.E.2d at 383. This Court further explained that:

> *Page* does not discuss how the nonparty

> property owners were in danger of losing a property right by invalidation of the covenant because the plaintiffs effectively conceded that *Karner* applied and that the Court was bound by *Karner*. While invalidation of the covenant in the present case could have some effect on nonparty property owners in Fairfield Harbor, invalidation of the covenant would not deprive them of any property right, which is required under *Karner* to make them necessary parties.

*Id*. at 29-30, 652 S.E.2d at 383-84 (citation omitted).

Following the reasoning in *Midsouth Golf*, we hold the Staals were proper parties to the action seeking to declare the amendments to the Declaration invalid and unenforceable, but were not necessary parties. The amendments at issue in the present case did not extinguish any property rights of the Staals akin to those in *Karner*. Therefore, we hold the trial court did not err in denying the Association's motion to dismiss.

Because the Staals were not necessary parties, we need not address whether the lis pendens was proper in this action.

<u>Plaintiffs' Appeal</u>

In plaintiffs' appeal, plaintiffs first argue the trial court erred in entering partial summary judgment upholding the validity and enforceability of the Assessment Amendment. Specifically, plaintiffs contend the trial court erred because

the assessment amendment was not signed by seventy-five percent (75%) of the lot owners and is not reasonable in light of the contracting parties' original intent.

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007)).

For background, the original Declaration required each lot owner to pay annual assessments to the Association.  Builders, however, were afforded the following benefits:

> Lots owned by the builder of the initial improvements on the Lot ("Builder") shall be assessed at a rate of twenty-five percent (25%) of the amount of the assessment due for a Lot that is owned by the Builder.  The assessments on Lots owned by a Builder shall accrue each month that the Builder owns the Lot and shall not be required to be paid by the Builder until the date of closing of the sale of a Lot from a Builder to a consumer-occupant Lot Owner or the date of rental of a Lot from a builder to a consumer-occupant Lot Owner.

The Assessment Amendment recorded in the Wake County Register of Deeds on 7 November 2011 eliminated these benefits to builders.  Specifically, the Assessment Amendment provides:

> There shall be no reduced assessment or delayed payment schedule for any Lot, regardless who owns the Lot or whether or not the Lot has been developed. . . .
>
> As of the effective date of this amendment, Owners of developed/unsold, partially developed or undeveloped Lots will be required to pay all accrued assessments in full that were previously scheduled to be due per the old Article IV, Section 9 prior to this amendment (at the previous 25% rate). These assessments are to be paid by January 31, 2012.

Pursuant to its terms, the Assessment Amendment became effective 1 January 2012.

On appeal, plaintiffs first contend the trial court erred in upholding the Assessment Amendment because the Assessment amendment was not properly signed by the required number of lot owners.

The general provisions of the Declaration allow for amendment during the first twenty (20) years "by an instrument signed by not less than seventy-five percent (75%) of the Lot Owners[.]" It is undisputed that at the time of the amendments, there were 44 lots in Linville Subdivision. Therefore, approval of an amendment required the signatures of the owners of 33 lots.

The Assessment Amendment, as recorded in the Wake County Register of Deeds, appears to include signatures of approval by

owners of 33 lots. Additionally, a certification signed by the president and the secretary of the Association verifying the Assessment Amendment was "duly executed by the written signatures of seventy-five percent (75%) of the membership" was recorded with the Assessment Amendment.

On appeal, plaintiffs acknowledge that if the signatures for the 33 lots were properly executed, the procedural requirements for amendment were met. Plaintiffs, however, contend that the amendment was only properly signed by owners of 30 lots. Plaintiffs allege the signatures for Lot 5, Lot 22, and Lot 37 were inadequate to approve the Assessment Amendment.

Upon review of plaintiffs' argument, we find it is unnecessary to assess the validity of each signature.

> On a motion for summary judgment the moving party has the burden of establishing that there is no genuine issue as to any material fact. Once the moving party has met its burden, the opposing party may not rest on the mere allegations or denials of his pleading. Instead, the opposing party must set forth specific facts showing that there is a genuine issue for trial[.]

*Gillis v. Whitley's Discount Auto Sales, Inc.*, 70 N.C. App. 270, 274, 319 S.E.2d 661, 664 (1984) (citations omitted).

In this case, the Association moved for summary judgment and the Assessment Amendment, as recorded, appears to contain the required signatures for approval. As plaintiffs admitted,

it is their burden to bring forward specific facts showing the Assessment Amendment was not properly approved. Plaintiffs have not done so in this case. We hold plaintiffs' allegations as to the lack of the signees' authority to sign on behalf of the contested lots, without more, is insufficient to raise an issue for trial.

Moreover, during oral arguments before this Court, plaintiffs focused on the validity of the signatures for Lot 37 by arguing an acknowledgment signed by the trustees of the trusts owning Lot 37 and recorded in the Wake County Register of Deeds on 22 December 2011 is evidence that the amendment was not properly signed. We are not convinced. The acknowledgement provided that the trustees of the trusts owning Lot 37 "were in agreement with the [Assessment] Amendment in all respects and intended to sign off on the amendment indicating their intent to be bound by the amendment and did, in fact, sign off on the [Assessment] Amendment indicating their intent to be bound by it[.]" In executing the acknowledgment, the trustees did not concede the Assessment Amendment was not executed properly. Moreover, the acknowledgement was signed and recorded prior to 1 January 2012, the effective date of the Assessment Amendment.

Nevertheless, plaintiffs' procedural argument is not determinative in this case. Plaintiffs also argue the trial court erred in entering partial summary judgment upholding the Assessment Amendment because the amendment contravenes the original intent of the Declaration. In support of their argument, plaintiffs rely on *Armstrong v. Ledges Homeowners Ass'n., Inc.*, 360 N.C. 547, 633 S.E.2d 78 (2006).

In *Armstrong*, our Supreme Court explained the following:

> The term amend means to improve, make right, remedy, correct an error, or repair. Amendment provisions are enforceable; however, such provisions give rise to a serious question about the permissible scope of amendment, which results from a conflict between the legitimate desire of a homeowners' association to respond to new and unanticipated circumstances and the need to protect minority or dissenting homeowners by preserving the original nature of their bargain. In the same way that the powers of a homeowners' association are limited to those powers granted to it by the original declaration, an amendment should not exceed the purpose of the original declaration.

*Id*. at 558, 633 S.E.2d at 87 (citations omitted). Thus, the Court held that "a provision authorizing a homeowners' association to amend a declaration of covenants does not permit amendments of unlimited scope; rather, every amendment must be *reasonable* in light of the contracting parties' original intent." *Id*. at 559, 633 S.E.2d at 87 (emphasis in original).

"[A] court may ascertain reasonableness from the language of the original declaration of covenants, deeds, and plats, together with other objective circumstances surrounding the parties' bargain, including the nature and character of the community." *Id*. at 559, 633 S.E.2d at 88. Yet, "[i]n all such cases, a court reviewing the disputed declaration amendment must consider both the legitimate needs of the homeowners' association and the legitimate expectations of lot owners." *Id*. at 560, 633 S.E.2d at 88.

Applying the above to the facts of *Armstrong*, the Court held an amendment authorizing "broad assessments 'for the general purposes of promoting the safety, welfare, recreation, health, common benefit, and enjoyment of the residents of [the community] as may be more specifically authorized from time to time by the Board' [was] unreasonable[,]" and thus invalid and unenforceable. *Id*. at 560-61, 633 S.E.2d at 88. In reaching its conclusion, the Court noted the nature of the community and the fact that there was nothing in the original declaration revealing an intent to confer unlimited powers of assessment on the homeowners' association. Specifically, the community was a "small residential neighborhood with public roads, no common areas, and no amenities." *Id*. at 560, 633 S.E.2d at 88.

Furthermore, the "petitioners purchased their lots without notice that they would be subjected to . . . additional affirmative monetary obligations imposed by a homeowners' association." *Id*. at 561, 633 S.E.2d at 89.

The Association, however, citing *Southeastern Jurisdictional Admin. Council, Inc. v. Emerson*, 363 N.C. 590, 598, 683 S.E.2d 366, 371 (2009) (holding an assessment amendment was reasonable given the community, which was in existence for nearly a century, was developed to foster a unique religious character, purchasers purchased lots with knowledge of the extensive amenities and with notice that the lots were subjected to a wide variety of detailed restrictions, and it was clear the original intent of the parties was to bind all purchasers to any rules deemed necessary to preserve the unique religious character and history of the community), argues the Assessment Amendment is reasonable in light of Linville Subdivision's unique characteristics and certain unanticipated circumstances.

Specifically, the Association distinguishes Linville Subdivision from the community in *Armstrong* on the grounds that Linville Subdivision is a private community with private roads, common areas, and amenities, all of which must be maintained and paid for by the Association. Quoting the Declaration, the

Association further argues the prevailing intent behind the Declaration's original assessment provisions was to provide an assessment rate that was adequate to meet the needs of the Association. The Association contends it was never intended, nor anticipated, that builders would own unimproved lots and be exempt from the full assessment rate for extended periods of time. The developer expected that all lots would be built on by 2011. In fact, the Association points to a provision in builder agreements executed by plaintiffs that requires builders to build promptly to support its position that the Assessment Amendment is proper to address unanticipated circumstances.

While we agree with the Association that Linville Subdivision is easily distinguishable from the community in *Armstrong*, we also find the Assessment Amendment easily distinguishable from the amendment at issue in *Armstrong*. Owners of lots in Linville Subdivision have been subjected to assessments from the beginning. Unlike the amendments at issue in *Armstrong* and *Emerson*, the Assessment Amendment does not establish new assessments on the entire community, but instead eliminates benefits afforded builders; benefits that likely persuaded builders to purchase lots in the first place and were essential to the original bargain.

We find it evident from the Declaration's original language that the intent of the provision providing builders with reduced assessments and deferrals in the payment of assessments was to encourage builders to purchase lots from the developer earlier than they might otherwise have purchased them; even before builders were ready to build. Not only did the provisions benefit builders, they also benefited the developer who was able to sell the lots more expeditiously. In a complete reversal, the Assessment Amendment eliminated the benefits that were essential to the original bargain with builders like plaintiffs.

While the primary purpose of the assessment provisions in the Declaration may be to provide sufficient funds for the Association to maintain the community and amenities, the Association originally approved the Declaration with the benefits to builders included. Now that all lots in Linville Subdivision are sold and the Association has the required number of votes for amendment, the Association cannot now amend the Declaration to the detriment of the builders who purchased lots with the expectation that they would be afforded the benefits. Moreover, with the exception of the easement for a separate construction entrance, the costs that the Association claims it cannot now afford because three out of the forty-four lots in

Linville Subdivision do not pay the full assessment rate are costs that should have been anticipated to begin with. Lastly, we are not persuaded that the language in builder agreements requiring builders to build promptly controls where the intent of the Declaration's original provisions are clear. Besides, even if the builder agreements did control, this Court will not determine what constitutes prompt as a matter of law.

Where the Assessment Amendment disregards the purpose of the Declaration's original provisions and completely eliminates the benefits to builders, we hold the amendment unreasonable, invalid, and unenforceable. Holding otherwise would permit homeowners' associations to amend similar provisions whenever they acquire the requisite number of votes for approval, regardless of the original intent. As our Supreme Court stated in *Armstrong*, "[t]his Court will not permit the Association to use the Declaration's amendment provision as a vehicle for imposing a new and different set of covenants, thereby substituting a new obligation for the original bargain of the covenanting parties." *Armstrong*, 360 N.C. at 561, 633 S.E.2d at 89.

The trial court's final judgment and order awarding the Association attorneys' fees were based on its grant of partial

summary judgment upholding the Assessment Amendment. Having determined the Assessment Amendment is unreasonable, invalid, and unenforceable, we vacate the final judgment and the order on attorneys' fees. Thus, we do not address plaintiffs' final argument regarding the sufficiency of the trial court's order on attorneys' fees.

## III. Conclusion

For the reasons discussed above, we affirm the denial of the Association's motion to dismiss, reverse the grant of partial summary judgment, and vacate the final judgment and the award of attorneys' fees in favor of the Association.

Affirmed in part, reversed in part, vacated in part.

Judges McGee and GEER concur.