"And the said Hugh and Mary, his wife, did therein also further covenant, promise, and agree, for themselves, their heirs, executors, and administrators, to and with the said William McConnel, his heirs and assigns, that he, the said Hugh, or the said Mary, his daughter, when she should arrive at age (which would happen in the year 1773), should and would, at and upon the request and at the cost and charges in the law of him, the said William McConnel, his heirs or assigns, make, do, *Page 404 
and execute, or cause and procure to be made, done and executed, all and every such act or acts, conveyance or assurance in the law whatsoever, for the better and more perfect conveying and assuring of the said messuage or lot of land and premises unto the said William (492) McConnel, his heirs and assigns forever, as by the said William McConnel, his heirs or assigns, or by his or their counsel learned in the law should be reasonably devised, advised, or required. By virtue of which sale to the said McConnel, he entered on the said bargained premises, and was thereof duly seized according to the legal operation and effect of the said deed poll. And being so seized, afterwards, to wit, on the first day of August, in the year of our Lord, 1768, in the county and district aforesaid, by a certain indenture then and there executed, between the said William McConnel and Jane, his wife, of the one part, and the said John Nesbit of the other part (which indenture, sealed with the seals of the said William and Jane, his wife, the said John Nesbit now brings into Court, the date whereof is the same day and year last aforesaid), which indenture hath also been duly proved and registered in due form of law, the said William and Jane, his wife, for and in consideration of the sum of forty-five pounds proclamation money, to them in hand paid by the said John Nesbit, granted, bargained, and sold unto the said John Nesbit, his heirs and assigns, the one-half part of the said lot number one (No. 1) purchased by him. William, as aforesaid; that is to say, the half part thereof lying to the south, and containing six poles in length, fronting the main street, and running twelve poles back, with the advantages, hereditaments, and appurtenances to the same half lot belonging, and all the estate, right, title, interest, claim, and demand of them, the said William McConnel, and Jane, his wife, of, in and to the same half lot of land and premises, and every part thereof, to have and to hold the same to him, the said John Nesbit, his heirs and assigns forever, to his and their own proper use and behoof. And the said William and Jane did then and there, in and by the said indenture, covenant and agree to and with the said John Nesbit, that they, the said William and Jane, the premises and every part thereof, so by them sold to the said John Nesbit, would warrant and forever defend against them, the said William and Jane, and their heirs, by virtue whereof the said John Nesbit entered into the (493) said half lot of land to him so sold as aforesaid, and was thereof seized according to the operation and effect of the said indenture.
"Nevertheless, a certain Anthony Newnan, who intermarried with the said Mary, daughter of the said Hugh and Mary Montgomery, having notice of the premises, afterwards, to wit, on the ___ day of ___, in the year of our Lord one thousand seven hundred and ____, claiming *Page 405 
title to the same half lot (sold to the said John as aforesaid), in right of his second wife, Mary, daughter of said Hugh, did interrupt the said John in his enjoyment and possession of the same, and did set up the title of the said Mary, his wife, and by force and virtue of the same did enter on the said half lot and turn said John out of possession and the enjoyment of the same half lot, and hath ever since, under and by virtue of his said wife, Mary's, title aforesaid, held the same. And the said John also saith, that on the ______ day of ______, in the year ____, in the county and district aforesaid, he requested the said Anthony Newnan and Mary, his wife, daughter of said Hugh as aforesaid (she, the said Mary, being then of age, that is to say, of the age of twenty-one years and upwards, to execute an indenture of bargain and sale, so as to convey to the said John, at the proper costs and charges of the said John, the said half lot in fee, agreeably to the tenor and effect of the said covenant made by the said Hugh and Mary, his wife, with the said William McConnel as aforesaid; but the said Anthony and Mary, his wife, then and there refused to execute the same, or in anywise to convey the title of her, Mary, the daughter, to said John, of which the said executor of the said Hugh afterwards, to wit, on the ____ day of ______, in the year _____, at the county and district aforesaid, had due notice, but have not procured the said Anthony and Mary, his said wife, to perform the covenant aforesaid of the said Hugh, which, on the part of the said Mary, the daughter, and those claiming by, from, or under her, was to be performed; nor have the said executors made the said John any satisfaction on account thereof; wherefore the said John saith, that he, the said Hugh, in his lifetime, and his said (494) executors since his death, have not kept the covenant aforesaid made by the said Hugh, and thereby said John hath sustained damage to the value of _______, and therefore, etc."
The jury having found a verdict for the plaintiff, and assessed his damages, the defendants moved in arrest of judgment, and assigned the following reasons: (1) That the covenant made by the testator is not such an one as can be assigned, so as to enable the assignee to sue in his own name; (2) That it is a covenant in gross; therefore the assignee can take no advantage thereof.
The question whether this action is maintainable by the assignee, under all the circumstances of the case, may receive some illustration by a statement of the substantial parts of the second and third resolutions inSpencer's case. By the second, it appears that if a man covenants for himself and his assigns, yet if the thing to be done be merely collateral to the land, and does not concern the thing demised *Page 406 
in any sort, the assignee shall not be charged. The instances stated are, where a lessee covenants for himself and his assigns to build a house upon the land of the lessor, which is not parcel of the demise, or to pay any collateral sum of money to the lessor; as an action would not lie in any of these cases against the assignee of the lessee, it follows for the same reason that no action would be maintainable by the assignee of the reversion against the lessee. The reason is satisfactorily explained by the examples stated in the third resolution. The first of these is a lease of a stock of cattle or goods with a covenant to deliver them or the value at the end of the term. This does not bind the assignee, because it is a thing merely in action in the personalty, and is destitute of the privity which subsists between the lessor and lessee of lands in respect of the reversion. The next instance is of a lease of house and lands, with a stock of cattle or sum of money rendering rent, with a covenant by the lessee, that he or his assigns shall redeliver the money or cattle at the end of the term. Neither is the assignee bound in this case, (495) although the rent might have been increased in respect of the money and cattle; because, the covenant is personal and binds only the covenanter, his executors and administrators.
From the whole of this case, it may be laid down as a rule without any exception, that a covenant to run with the land, and bind the assignee, must respect the thing granted or demised, and that the act covenanted to be done or omitted, must concern the lands or estate conveyed. But when it appears on the face of this declaration, that the defendant's testator who sold the lot, neither had, nor pretended to have, any title to it; that, on the contrary, Mary, his daughter, had the complete seizin under the deed from Cranston; that the testator, having conveyed no title to McConnel, the plaintiff could consequently derive none from him, it may be asked, what is there to create any privity between these parties, either of estate or contract? The maxim, transit terra, cum onere, presupposes a transfer of the land, and when that actually takes place, it forms the medium of a privity between the assignees. Unless, therefore, a presumption is made against the unequivocal statement in the declaration, the title of this lot never ceased to be in the daughter, from the time Cranston conveyed to her. Suppose the father and mother had entered into the covenants contained in the deed, by a separate instrument, unaccompanied with any conveyance of the land, no one could argue that an assignee might enforce in a court of law the benefit of such a contract. Can the case, then, be materially altered by annexing these covenants to a deed of bargain and sale, which, as a conveyance under the statute of uses, transfers only what the bargainor might rightfully convey? For the declaration shows that rightfully he *Page 407 
could convey nothing. If one man covenants that another shall quietly enjoy or obtain a conveyance for an estate which is owned by a third, this binds the covenanter and his executors or administrators to the covenantee, but cannot extend to the assignees of the latter. Nor can I conceive that the law is different, where a man sells an estate and makes the same covenants, provided it appears upon the declaration that he had no right. Both cases are equally devoid of that privity (496) which can alone form the basis of reciprocal remedies to the parties.
So far the case has been briefly considered, as influenced by the general principles laid down in Spencer's case. Some other authorities approach more directly to the question upon the record. The case ofWebb v. Russell, 3 Term Rep., 393, explicitly shows that there must be a privity of estate between the covenanting parties; and therefore if a mortgagor and mortgagee of a term make a lease, in which the covenants for the rents and repairs are with the mortgagor and his assigns, the assignee of the mortgagee cannot maintain an action for the breach of the covenants, because they are collateral to his assignor's interest in the land, and therefore do not run with it. The mortgagor, having no more than an equitable title, could transfer no privity; but yet he, himself, might sue upon the covenants, as was done in this very case. 1 H., Bl., 562. In that case, the claim, though perfectly consonant with natural equity, and even so strong on the merits as to inspire the Court with a wish that they might see a ground whereon to decide in the plaintiff's favor, was nevertheless compelled to yield to the rules and policy of the law. It therefore furnishes an answer to all the arguments which might be drawn from the justice and convenience of supporting the present action; since it is of primary importance to preserve in an uniform and steady direction, the principles of law which govern estates and contracts, that a knowledge of the consequences may assist men in regulating their transactions. And upon this occasion, it may not be improper to use the language of a diligent and learned author: "Arguments from inconvenience certainly deserve the greatest attention, and where the weight of other reasoning is nearly in equipoise, ought to turn the scale. But if the rule of law is clear and explicit, it is vain to insist upon inconvenience; nor can it be true that nothing which is inconvenient is lawful, for that supposes, in those who make laws, a perfection which the most exalted human wisdom is incapable of attaining, and would be an invincible argument against ever changing the law." Harg. Coke Litt. (497)
The case next to be examined is that of Noke v. Awder, Cro. Eliz., 373, 476, which I will succintly [succinctly] state. The plaintiff declared that *Page 408 
John King let the lands to the defendant for a term of years, who granted them by indenture to one Abel, with a covenant that Abel and his assigns should peaceably enjoy, without interruption of any person, and that Abel assigned to the plaintiff. The declaration then states, that long before John King had anything in the lands, one Robert King was seized in fee, and died seized, whereupon the land descended to Thomas King, who entered upon the plaintiff, and ousted him. After a verdict for the plaintiff, the exception taken in arrest of judgment was that the plaintiff not having shown that John King had anything when he made the lease to the defendant, and the defendant having granted to Abel by indenture, nothing passed thereby, but by estoppel; then when Abel assigned to the plaintiff, nothing passed, for a lessee by estoppel cannot assign anything over; consequently, the plaintiff was not such an assignee as could maintain an action of covenant against the defendant, and the Court were of opinion that covenant will not lie upon an assignment of an estate by estoppel.
This case may, we think, be considered as good law, because it is in exact conformity with the principles before stated, which governed the decision in Webb v. Russell, and because it is noticed by late and respectable writers. Its authority, however, has been supposed to be weakened by what fell from the Court in Palmer v. Ekins, 2 Ld. Ray., 1551, but a slight examination will serve to evince that this idea is founded in mistake, and instead of being thus shaken, it is in truth confirmed and established. The case was this: The plaintiff, Palmer, in an action of covenant against Elizabeth Ekins, for nonpayment of rent, declared that John Palmer was seized in fee, and being so seized, by indenture demised to the defendant, a messuage for twelve years, rendering rent to the lessor and his assigns, by virtue of which the defendant entered, and that afterwards John Palmer, by lease and release, conveyed (498) the reversion to the plaintiff. The breach is then assigned in the non payment of the rent. The defendant pleaded a specialnil habuit in tenementis, which was overruled upon demurrer, upon the ground that it appeared upon the face of the declaration that the lease was made to the defendant by indenture, which estopped him from such a plea; and further, that an assignee might take advantage of an estoppel, because he was privy in estate.
Between the two cases there is this striking difference, which presents itself at once — that in the latter, the declaration discloses a good title in John Palmer when he leased to the defendant, and a clear reversionary interest when he assigned to the plaintiff, who was therefore not merely a claimant by estoppel, but (if we may so express it) an assignee in pleno jure. Whereas in Noke v. Awder, the declaration shows that *Page 409 
when John King made the lease to the defendant he had no estate, and consequently that the defendant's lease to Abel was only by estoppel, who could assign no interest to the plaintiff. But in Palmer v. Ekins, as the plaintiff received the estate by assignment, a privity was thus created, and he might take advantage of the estoppel, which appeared upon the declaration.
It is evident, then, that this case does not, either expressly or by implication, warrant the inference that an assignee by estoppel may maintain covenant. The proposition which it does warrant is essentially different, viz.: that an assignee (by which is meant an assignee with an interest) may take advantage of an estoppel appearing upon the face of the declaration. From the whole of the case it may be fairly collected, that the judgment would have been rendered against the plaintiff, had it appeared upon the declaration that he was no more than an assignee by estoppel.
It is scarcely necessary to make any remarks upon the cases cited to show that parties or privies in estate or interest are bound by estoppel. The position is admitted, but it can only be correctly applied to those cases where the privity appears upon the face of the proceedings, certainly not to those where the want of privity is manifest. Then admitting that Montgomery's deed (which is a deed poll) would, (499) if nothing more appeared upon the declaration, but that the assignment and the breach estop him from denying his title, which is nearly the case in 2 Ld. Ray. Yet under the circumstances which do exist in the case, there are two rules which must be taken into the account; one is that a stranger shall neither be bound by nor take advantage of an estoppel; the other is, that where the truth is apparent upon the same record, there the adverse party shall not be estopped to take advantage of it; for he cannot be estopped to allege the truth, when it appears of record. Coke Litt., 353 b.
The remarks we have made lead us to this conclusion: That the plaintiff, placed in the best possible light, is no more than an assignee by estoppel; that there is a total absence of that privity between him and the defendant, which could alone form the chain of legal communication; that the covenants made by Montgomery were collateral to the title; and because these things distinctly appear upon the declaration, we are of opinion that the judgment should be arrested.
Cited: Redmond v. Staton, 116 N.C. 143; Parrott v. R. R., 165 N.C. 316. *Page 410 
(500)