**MIDSOUTH GOLF, LLC v. FAIRFIELD HARBOURSIDE CONDO. ASS'N**

[187 N.C. App. 22 (2007)]

MIDSOUTH GOLF, LLC, Plaintiff-Appellant v. FAIRFIELD HARBOURSIDE CONDO-MINIUM ASSOCIATION, INC., FAIRFIELD HARBOURSIDE II CONDOMINIUM ASSOCIATION, INC., THE FAIRWAYS CONDOMINIUM PROPERTY OWNERS ASSOCIATION, INC., SAND CASTLE COVE CONDOMINIUM ASSOCIATION, INC., SAND CASTLE VILLAGE CONDOMINIUM ASSOCIATION, INC., SAND CAS-TLE VILLAGE II CONDOMINIUM ASSOCIATION, INC., WATERWOOD TOWN-HOUSES PROPERTY OWNERS ASSOCIATION, INC., WINDJAMMER VILLAS ASSOCIATION, INC., AND WINDJAMMER VILLAS II CONDOMINIUM PROPERTY OWNERS ASSOCIATION, INC., Defendants-Appellees

No. COA07-64

(Filed 6 November 2007)

**1. Appeal and Error— appealability—interlocutory order— writ of certiorari**

Assuming arguendo that plaintiff's appeal from the 26 July 2006 order is an appeal from an interlocutory order, the Court of Appeals elected to consider the appeal by granting plaintiff's conditional petition for writ of certiorari.

**2. Deeds— restrictive covenants—payment of recreational amenity fees—necessary parties**

The trial court did not err by denying plaintiff's motion to dismiss defendants' counterclaims for failure to join all necessary parties including all property owners within Fairfield Harbour whose properties are subject to the Master Declaration, because: (1) the covenant at issue is one for the payment of amenity fees, not a residential use restriction; (2) only the owner of the recreational amenities has the power to levy a recreational amenity charge and to enforce this restrictive covenant; and (3) the extinguishment of the restrictive covenant would not deprive the other property owners of any property right.

**3. Deeds— restrictive covenants—recreational amenity fees—personal covenant not running with land—touch and concern requirement**

A covenant to pay recreational amenity fees was a personal covenant that did not run with the land and was not enforceable against time share communities by plaintiff as a successor in interest to the original covenantor, notwithstanding the parties to the Master Declaration intended that the covenant to pay amenity fees would run with the land, because the covenant did not touch and concern defendants' properties where the recreational amenities are not appurtenant to defendants' properties; defend-

MIDSOUTH GOLF, LLC v. FAIRFIELD HARBOURSIDE CONDO. ASS'N

[187 N.C. App. 22 (2007)]

ants do not have any easement rights in the recreational amenities financed by the recreational amenity charge but have easement rights only in the common areas, or parks, within the development; and defendants have only a revocable license to use the recreational amenities.

4. **Appeal and Error— preservation of issues—failure to argue at trial—failure to assign error**

Although plaintiff contends that the 1993 covenants which are premised on the validity of the amenity fee provision of the Master Declaration should be declared unenforceable if the Master Declaration providing for payment of the amenity fee is held to be a personal covenant and unenforceable, the issue is not properly before the Court of Appeals because: (1) plaintiff did not make this argument before the trial court; and (2) this contention was not assigned as error as required by N.C. R. App. P. 10(a).

Appeal by Plaintiff from order entered 26 July 2006 by Judge W. Allen Cobb, Jr. in Superior Court, Craven County. Heard in the Court of Appeals 29 August 2007.

*Ward and Smith, P.A., by Eric J. Remington, for Plaintiff-Appellant.*

*Troutman Sanders LLP, by Gary S. Parsons, Gavin B. Parsons, and D. Martin Warf, for Defendants-Appellees Fairfield Harbourside Condominium Association, Inc.; The Fairways Condominium Association, Inc.; Sandcastle Village Condominium Association Inc.; Windjammer Villas Association, Inc.; and Windjammer Villas Association II Condominium Property Owners Association, Inc.*

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Craig D. Justus, for Defendants-Appellees Fairfield Harbourside II Condominium Association, Inc.; Sandcastle Cove Condominium Association, Inc.; Sandcastle Village II Condominium Association, Inc.; and Waterwood Townhouses Property Owners Association, Inc.*

McGEE, Judge.

Fairfield Harbour, Inc. (FHI) recorded a set of restrictive covenants, entitled Master Declaration of Fairfield Harbour (the Master Declaration), in 1979. The Master Declaration governs the

property development known as Fairfield Harbour, which is located in New Bern, North Carolina, and which was, in 1979, owned by FHI. The Master Declaration applies to all properties within Fairfield Harbour, including

> each subdivided lot therein, each unit in a tract of land submitted to the provisions of the Unit Ownership Act (Chapter 47A of the North Carolina General Statutes) or to any similar act providing for condominium or unit ownership of property, and to such other divisions of land or interests therein, including interval ownership interests[.]

In Article I, entitled "Recreational Amenities Charge," the Master Declaration sets forth the restrictive covenant at issue in the present case (hereinafter, the covenant to pay amenity fees):

> 1. FHI shall have the power to levy an annual charge, the amount of said charge to be determined solely by FHI after consideration of current and future needs of FHI for the reasonable and proper operation, maintenance, repair and upkeep of all recreational amenities owned by FHI and actually provided for the use of Purchasers at the date of levy of such charge, such recreational amenities to include but not be limited to dams, marinas, beaches, river and canal access tracts, golf courses, tennis courts, swimming pools, campgrounds, clubhouses and adjacent clubhouse grounds.

In Article II, the Master Declaration declares that every person acquiring title to property within Fairfield Harbour must become a member of the Fairfield Harbour Property Owners Association, Inc. (the Association). The Master Declaration further states that the Association "shall be responsible for the operation, maintenance, repair and upkeep of the parks and other common areas or amenities now or hereafter owned by [the Association] within Fairfield Harbour."

In Article III, the Master Declaration makes a further distinction between those recreational amenities owned by FHI, its successors, or assigns, and the parks or common areas owned by the Association:

> 1. . . . An easement for the use and enjoyment of each of the areas designated as parks is reserved to FHI, its successors and assigns; to the persons who are from time to time members or associate members of the [Association]; to the members and owners of any recreational facility; to the residents, tenants and

MIDSOUTH GOLF, LLC v. FAIRFIELD HARBOURSIDE CONDO. ASS'N

[187 N.C. App. 22 (2007)]

occupants of any multi-family residential building, guest house, inn or hotel facility, and all other kinds of residential structures that may be erected within the boundaries of Fairfield Harbour; and to the invitees of all of the aforementioned persons, the use of which shall be subject to such rules and regulations as may be prescribed by FHI or the Association, if the Association is the owner of the facility or property involved.

2. The ownership of all of the recreational amenities within Fairfield Harbour . . . shall be in FHI or its successors, grantees, or assigns, and the use and enjoyment thereof shall be on such terms and conditions as FHI, its successors, grantees or assigns, from time to time shall license[.]

FHI continued to develop property within Fairfield Harbour and created the time share communities that are represented by Defendants in this case. FHI recorded restrictive covenants for each time share community and incorporated the covenant to pay amenity fees referenced in the Master Declaration.

FHI subsequently sold its recreational amenities to Harbour Recreation Club, Inc. (HRC) in 1993, and FHI and HRC agreed to a set of additional restrictive covenants (the 1993 covenants). The 1993 covenants purported to allow the owner of the recreational amenities to collect amenity fees from time share units at a rate of up to 5.556 times the fees collected from individual lot owners within Fairfield Harbour. However, based upon the pleadings, all parties agree that the 1993 covenants did not fall within the chains of title of Defendants or their respective time share members.

A dispute arose between Defendants and HRC as to the amount of amenity fees charged, and the parties entered into a settlement agreement (the 1998 settlement agreement). Pursuant to the 1998 settlement agreement, HRC could not assess amenity fees to individual time share units at a rate higher than the amenity fees assessed to individual lot owners.

HRC sold the recreational amenities it owned to Plaintiff in 1999. The purchase agreement between HRC and Plaintiff referenced the Master Declaration and the 1993 covenants, but did not reference the 1998 settlement agreement. From 2000 through 2004, Defendants, on behalf of their respective time share members, paid amenity fees to Plaintiff at the same rate that such fees were assessed to individual lot owners. Plaintiff sells golf and social memberships to those who

seek to use the recreational amenities, including members of the public who do not own property within Fairfield Harbour.

Plaintiff filed this action against Defendants on 4 November 2004, alleging it was entitled to collect amenity fees from Defendants at the rate of up to 5.556 times the fees collected from individual lot owners, as set forth in the 1993 covenants. Plaintiff also alleged it was owed over $1.8 million in past due amenity fees. Defendants filed their amended answers, raising, *inter alia*, the following defense:

The Master Declaration establishes a license arrangement between the owner of amenities and the property owners subject to an amenity fee as to the use of any facilities. As such, and because said amenity fee is not tied to any reciprocal benefits and burdens arising from the ownership of property in Fairfield Harbour, said obligation is a personal covenant and not binding on Defendants or their members.

Defendants also filed amended counterclaims for breach of contract, unjust enrichment, and declaratory judgment.

Plaintiff filed a motion to dismiss Defendants' amended counterclaims for failure to join all necessary parties. Defendants filed motions for partial summary judgment on the ground that the covenant to pay amenity fees was a personal covenant and was therefore not binding on Defendants or their members.

[1] The trial court entered an order on 26 July 2006 granting Defendants' motions for partial summary judgment and denying Plaintiff's motion to dismiss. Subsequently, Defendants Fairfield Harbourside II Condominium Association, Inc., Sandcastle Cove Condominium Association, Inc., Sandcastle Village II Condominium Association, Inc., and Waterwood Townhouses Property Owners Association, Inc. voluntarily dismissed their counterclaims without prejudice. However, the remaining Defendants did not dismiss their counterclaims. Accordingly, Plaintiff's appeal from the trial court's 26 July 2006 order is interlocutory. Nevertheless, assuming *arguendo* that Plaintiff appeals from a nonappealable interlocutory order, we elect to consider the appeal by granting Plaintiff's conditional petition for writ of certiorari. *See Williams v. Poland*, 154 N.C. App. 709, 711, 573 S.E.2d 230, 232 (2002) (stating: "Assuming, *arguendo*, that the case here is an interlocutory appeal, we elect to consider the appeal by granting [the] appellant's petition for writ of certiorari according to N.C.R. App. P. 21(a)(1).").

I.

**[2]** Plaintiff first argues the trial court erred by denying its motion to dismiss Defendants' counterclaims for failure to join all necessary parties. Specifically, Plaintiff argues that all property owners within Fairfield Harbor, whose properties are subject to the Master Declaration, are necessary parties. We disagree.

N.C. Gen. Stat. § 1A-1, Rule 19(a) (2005) governs the necessary joinder of parties and provides:

> Subject to the provisions of Rule 23, those who are united in interest must be joined as plaintiffs or defendants; but if the consent of anyone who should have been joined as plaintiff cannot be obtained he may be made a defendant, the reason therefor being stated in the complaint; provided, however, in all cases of joint contracts, a claim may be asserted against all or any number of the persons making such contracts.

" 'Necessary parties must be joined in an action. Proper parties may be joined.' " *Karner v. Roy White Flowers, Inc.*, 351 N.C. 433, 438, 527 S.E.2d 40, 44 (2000) (quoting *Booker v. Everhart*, 294 N.C. 146, 156, 240 S.E.2d 360, 365 (1978)). "A necessary party is one who 'is so vitally interested in the controversy that a valid judgment cannot be rendered in the action completely and finally determining the controversy without [that party's] presence.' " *Id.* at 438-39, 527 S.E.2d at 44 (quoting *Strickland v. Hughes*, 273 N.C. 481, 485, 160 S.E.2d 313, 316 (1968)). However, "[a] proper party is one whose interest may be affected by a judgment but whose presence is not essential for adjudication of the action." *River Birch Associates v. City of Raleigh*, 326 N.C. 100, 129, 388 S.E.2d 538, 555 (1990) (citing *Strickland*, 273 N.C. at 485, 160 S.E.2d at 316).

In support of its argument that all property owners within Fairfield Harbour are necessary parties, Plaintiff relies upon *Karner*, where the plaintiffs and the defendants owned lots in a subdivision. *Karner*, 351 N.C. at 434, 527 S.E.2d at 41. Our Court stated that "[w]hen the developer began conveying lots in 1907, each deed included a covenant restricting the use of each parcel to residential use only." *Id.* The defendants sought to demolish the residential structures on three lots in the subdivision and sought to construct a commercial building upon those lots. *Id.* The plaintiffs, who owned lots adjacent to the defendants' lots, filed an action to enjoin the defendants. *Id.* The defendants raised the affirmative defense that "a

change of circumstances had occurred making use of the lots for residential purposes no longer feasible." *Id.*

The intervenor-plaintiffs, who also owned property within the subdivision, were allowed to intervene, and the plaintiffs and the intervenor-plaintiffs filed a motion to join all other property owners within the subdivision as necessary parties. *Id.* at 434-35, 527 S.E.2d at 41-42. However, the trial court denied the motion for joinder, and the Court of Appeals, in a split decision, affirmed the denial of the motion. *Id.* at 435-36, 527 S.E.2d at 42.

The Supreme Court in *Karner* recognized that "[t]he placement of the same restrictive covenant in all of the deeds conveying lots out of a subdivision according to a common plan of development" allows a grantee to "enforce the restriction against any other grantee governed by the common plan of development." *Id.* at 436-37, 527 S.E.2d at 42-43 (citing *Hawthorne v. Realty Syndicate, Inc.*, 300 N.C. 660, 665, 268 S.E.2d 494, 497, *reh'g denied*, 301 N.C. 107, 273 S.E.2d 442 (1980)). Our Supreme Court further recognized that the right of one grantee to enforce a residential restrictive covenant against another is a property right with value. *Id.* at 437-38, 527 S.E.2d at 43 (citing *Tull v. Doctors Building, Inc.*, 255 N.C. 23, 41, 120 S.E.2d 817, 829 (1961)). Therefore, our Supreme Court held that "each property owner within [the subdivision] has the right to enforce the residential restriction against any other property owner seeking to violate that covenant[,]" and that such a right is a valuable property right. *Id.* at 439, 527 S.E.2d at 44. The Supreme Court also held that if the defendants successfully abrogated the restrictive covenant as to their lots, "each property owner within the subdivision would lose the right to enforce that same restriction." *Id.* at 439-40, 527 S.E.2d at 44. Accordingly, because they were subject to lose a property right, our Supreme Court concluded that the nonparty property owners in the subdivision were necessary parties, and the Supreme Court reversed on this issue. *Id.* at 440, 527 S.E.2d at 44-45.

In the present case, unlike in *Karner*, the covenant at issue is one for the payment of amenity fees, not a residential use restriction. Pursuant to the Master Declaration, only the owner of the recreational amenities has the power to levy such a recreational amenity charge. As such, only the owner of the recreational amenities has the power to enforce this restrictive covenant. None of the property owners within Fairfield Harbour have the right to enforce the covenant to pay amenity fees against any of the other owners. Accordingly, the extinguishment of the restrictive covenant in the present case would

not deprive the other property owners of any property right akin to the right that the nonparty property owners were deprived of in *Karner*. As a result, *Karner* is distinguishable.

Plaintiff also relies upon *Page v. Bald Head Ass'n*, 170 N.C. App. 151, 611 S.E.2d 463, *disc. review denied*, 359 N.C. 635, 616 S.E.2d 542 (2005), where the defendants, the Bald Head Association and its individual directors, recorded a revised covenant that provided for a "general assessment to be levied against all units 'at a level which is reasonably expected to produce total income for the Association equal to the total budgeted Common Expenses, including reserves.' " *Id.* at 152-53, 611 S.E.2d at 464. The plaintiffs ceased paying annual dues on several lots, which resulted in liens being placed on those properties. *Id.* at 153, 611 S.E.2d at 465. The plaintiffs filed an action seeking, *inter alia*, to have the new assessment provisions declared null and void, and the defendants filed a motion to dismiss for failure to join all necessary parties. *Id.* The trial court dismissed without prejudice the plaintiffs' claim to invalidate the assessment provisions for failure to join all property owners on Bald Head Island. *Id.*

On appeal, our Court recited the holding of *Karner* as follows: "[A]ll property owners affected by a residential use restrictive covenant [are] necessary parties to an action to invalidate that covenant." *Id.* at 154, 611 S.E.2d at 465 (citing *Karner*, 170 N.C. App. at 438-40, 527 S.E.2d at 43-44). However, while the plaintiffs in *Page* argued on appeal that the trial court erred by dismissing their claim, the plaintiffs "acknowledge[d] that *Karner* [was] controlling . . . and concede[d] that this Court [was] bound by prior decisions of our Supreme Court." *Id.* at 154, 611 S.E.2d at 465. Therefore, our Court found the plaintiffs' assignment of error to be without merit, and affirmed the trial court's dismissal. *Id.*

In the present case, Plaintiff argues that *Page* is controlling because the covenant at issue in *Page* was a covenant for the payment of assessments, which was similar to the one at issue in the present case. However, *Page* does not reveal sufficient facts for us to determine whether the covenant at issue was similar to the one at issue in the present case. Moreover, *Page* does not discuss how the nonparty property owners were in danger of losing a property right by invalidation of the covenant because the plaintiffs effectively conceded that *Karner* applied and that the Court was bound by *Karner*. *See id.* While invalidation of the covenant in the present case could have some effect on nonparty property owners in Fairfield

Harbor, invalidation of the covenant would not deprive them of any property right, which is required under *Karner* to make them necessary parties.

For the reasons stated above, we hold the trial court did not err by denying Plaintiff's motion to dismiss Defendants' counterclaims. We overrule these assignments of error.

## II.

[3] Plaintiff also argues the trial court erred by granting Defendants' motions for partial summary judgment. Specifically, Plaintiff argues the trial court erred by concluding that the covenant to pay amenity fees was a personal covenant that did not run with the land. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). The party who moves for summary judgment has the burden of "establishing the lack of any triable issue of fact." *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). "[T]he standard of review on appeal from summary judgment is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law." *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998). We review the evidence in the light most favorable to the nonmoving party. *Id.*

The following principles also apply to our review of the restrictive covenant at issue in the present case. "A covenant is either real or personal. Covenants that run with the land are real as distinguished from personal covenants that do not run with the land." *Raintree Corp. v. Rowe*, 38 N.C. App. 664, 669, 248 S.E.2d 904, 907 (1978).

> The significant distinction between these types of covenants is that a personal covenant creates a personal obligation or right enforceable at law only between the original covenanting parties, . . . whereas a real covenant creates a servitude upon the land subject to the covenant ("the servient estate") for the benefit of another parcel of land ("the dominant estate")[.]

*Runyon v. Paley*, 331 N.C. 293, 299, 416 S.E.2d 177, 182 (1992) (citations omitted). The three essential elements for the creation of a real covenant are "(1) the intent of the parties as can be determined from

the instruments of record; (2) the covenant must be so closely connected with the real property that it touches and concerns the land; and, (3) there must be privity of estate between the parties to the covenant." *Raintree*, 38 N.C. App. at 669, 248 S.E.2d at 908.

### A. Intent of the Parties

As to the intent requirement, our Court has held that a recital that the covenant is to run with the land "is not controlling. The express intent of the parties can prohibit a covenant from running with the land, but it cannot make a personal covenant run with the land." *Raintree*, 38 N.C. App. at 669, 248 S.E.2d at 908. Our Court has further clarified that "[i]ntent alone is not sufficient to make the covenant run. The other legal requirements must be met." *Id.* (citing *Neponsit Property Owners' Ass'n v. Emigrant I. Sav. Bank*, 15 N.E.2d 793 (N.Y. 1938)).

"Whether restrictions imposed upon land by a grantor create a personal obligation or impose a servitude upon the land enforceable by subsequent purchasers from his grantee is determined by the intention of the parties at the time the deed containing the restriction was delivered." *Stegall v. Housing Authority*, 278 N.C. 95, 100, 178 S.E.2d 824, 828 (1971). "Restrictions in a deed will be regarded as for the personal benefit of the grantor unless a contrary intention appears, and the burden of showing that they constitute covenants running with the land is upon the party claiming the benefit of the restriction." *Id.* at 101, 178 S.E.2d at 828. In *Raintree*, our Court further recognized that "[t]hese principles apply with especial force to persons who (such as Raintree) are not parties to the instrument containing the restrictions." *Raintree*, 38 N.C. App. at 669, 248 S.E.2d at 908 (citing *Stegall*, 278 N.C. 95, 178 S.E.2d 824).

In the present case, the Master Declaration states that all restrictions "shall be deemed to be restrictions running with the land and binding on Purchasers, their heirs, successors and assigns[.]" The Master Declaration also specifically declares that "[t]he power to levy [a recreational amenities charge] shall inure also to the successors and assigns of each such recreational amenity[.]" Moreover, the Master Declaration provides that the provisions set forth therein "shall, as to the owner of each such property [within Fairfield Harbour], his heirs, successors or assigns, operate as covenants running with the land for the benefit of each and all other properties in Fairfield Harbour and their respective owners."

Defendants counter that the provisions setting forth the intent that the restrictive covenants run with the land are merely "boiler-plate recitals." Defendants specifically contend that because the Master Declaration only gave property owners a license to use recreational amenities, the parties did not intend for the covenant to pay amenity fees to run with the land. We disagree. While the fact that property owners merely have a license in the recreational amenities is material to our analysis of the touch and concern requirement, discussed below, it has no bearing on the intent of the parties. We hold that by virtue of the several declarations discussed above, the parties intended that the covenant to pay amenity fees would run with the land. However, as we have already recognized, "[i]ntent alone is not sufficient to make the covenant run. The other legal requirements must be met." *Raintree*, 38 N.C. App. at 669, 248 S.E.2d at 908.

### B. Touch and Concern

Regarding the touch and concern requirement, our Supreme Court has recognized that this element "is not capable of being reduced to an absolute test or precise definition." *Runyon*, 331 N.C. at 300, 416 S.E.2d at 183. Our Court has stated one of the historical tests as follows: " '[I]t may be laid down as a rule without any exception, that a covenant to run with the land, and bind the assignee, must respect the thing granted or demised, and that the act covenanted to be done or omitted, must concern the lands or estate conveyed.' " *Raintree*, 38 N.C. App. at 670, 248 S.E.2d at 908 (quoting *Nesbit v. Nesbit*, 1 N.C. 490, 495 (1801)). Our Court has further stated that "[t]o touch and concern the land, the object of the covenant must be 'annexed to, inherent in, or connected with, land or other real property,' or related to the land granted or demised." *Id.* (quoting 20 Am. Jur. 2d *Covenants, Conditions, Etc.* § 29 (1965)).

At common law, courts drew a distinction between negative covenants, which prohibit something, and affirmative covenants, which require a positive act. *Id.* At common law, negative covenants ran with the land, while affirmative covenants did not. *Id.* "As a result of the common law rule on affirmative covenants, the requirements for a covenant to run are to be more strictly applied to affirmative covenants than negative covenants." *Id.*

In *Raintree*, the plaintiff, Raintree Corporation, purchased the original developer's interest in a planned residential community named the Village of Raintree. *Raintree*, 38 N.C. App. at 665, 248 S.E.2d at 906. Pursuant to certain recorded covenants, conditions

and restrictions, every owner of a lot in the Village of Raintree was a mandatory member of Raintree Country Club and was obligated to pay club dues. *Id.* at 665-66, 248 S.E.2d at 906. The plaintiff sued the defendants, who owned a lot in the Village of Raintree, to collect, *inter alia,* unpaid country club dues. *Id.* at 665, 248 S.E.2d at 906. The defendants moved to dismiss on the ground that the plaintiff was not the real party in interest, and the trial court, which treated the motion as one for summary judgment, dismissed the action. *Id.* at 666, 248 S.E.2d at 906.

In order to determine whether the plaintiff was the real party in interest, our Court had to examine whether the covenant was real or personal. *Id.* at 668-71, 248 S.E.2d at 907-09. Our Court determined that the developer intended the covenants to run with the land. *Id.* at 669, 248 S.E.2d at 908. However, because this determination was not dispositive of the issue, our Court examined whether the covenant at issue touched and concerned the land, holding:

> This covenant creates an affirmative duty, a charge or obligation to pay money, *i.e.,* country club dues, for the services and use of the country club facilities which are not upon, connected with, or attached to the defendants' land in any way. The defendants are required to pay, whether they use the facilities or not. The payment of a collateral sum of money does not concern the land. *Nesbit v. Nesbit, supra.* Courts have generally held that covenants to pay money do not touch and concern the land. *Neponsit Property Owners' Ass'n v. Bank, supra.* . . . We find that the performance by the defendants of this covenant is not connected with the use of their land and does not touch or concern their land to a substantial degree.

*Id.* at 670, 248 S.E.2d at 908-09. Therefore, the Court held that the covenant to pay country club dues was a personal covenant. *Id.* at 671, 248 S.E.2d at 909. Accordingly, because personal covenants are not assignable, our Court held that the plaintiff was not the real party in interest and, therefore, affirmed the trial court. *Id.* at 671-72, 248 S.E.2d at 909.

Like the covenant at issue in *Raintree,* the covenant at issue in the present case is an affirmative covenant. Therefore, we must strictly construe the requirements for creation of a real covenant. *See Raintree,* 38 N.C. App. at 670, 148 S.E.2d at 908. Also, as in *Raintree,* Defendants in the present case are required to pay the recreational amenity fees whether or not they use the amenities

financed by the charge. Additionally, the recreational amenities are open, for a fee, to members of the public who do not own property within Fairfield Harbour.

In support of its holding in *Raintree*, our Court recognized that the country club facilities were "not upon, connected with, or attached to the defendants' land in any way[,]" and that "the performance by the defendants of this covenant is not connected with the use of their land and does not touch or concern their land to a substantial degree." *Id.* at 670, 248 S.E.2d at 908-09. However, our Court did not explain why the performance of the covenant was not sufficiently connected with the use of the defendants' land. In support of its holding in *Raintree,* our Court did cite a New York case, *Neponsit Property Owners' Ass'n v. Emigrant I. Sav. Bank,* 15 N.E.2d 793 (N.Y. 1938), and we find *Neponsit* instructive on this issue.

In *Neponsit*, the plaintiff's predecessor in interest had sold lots in a residential community, including the land sold to the defendant's predecessor in title, subject to restrictive covenants. *Neponsit*, 15 N.E.2d at 793-94. One of the covenants provided for payment of a sum of money "devoted to the maintenance of the roads, paths, parks, beach, sewers and such other public purposes as shall from time to time be determined by the party of the first part, its successors or assigns." *Id.* at 794. The Court of Appeals of New York determined that the covenant was a real covenant that ran with the defendant's land. *Id.* at 797. The Court of Appeals of New York emphasized that the grantees of the plaintiff's predecessor in title "obtained not only title to particular lots, but an *easement or right of common enjoyment* with other property owners in roads, beaches, public parks or spaces and improvements in the same tract." *Id.* (emphasis added). The Court further held as follows:

> For full enjoyment in common by the defendant and other property owners of these easements or rights, the roads and public places must be maintained. In order that the burden of maintaining public improvements should rest upon the land benefited by the improvements, the grantor exacted from the grantee of the land with its appurtenant easement or right of enjoyment a covenant that the burden of paying the cost should be inseparably attached to the land which enjoys the benefit. It is plain that any distinction or definition which would exclude such a covenant from the classification of covenants which 'touch' or 'concern' the land would be based on form and not on substance.

*Id.*

In *Neponsit*, the fact that the grantees of lots within the development received an easement in the common areas and amenities financed by those fees was central to the Court's holding that the covenant to pay a fee touched and concerned the land. *See id.* In contrast, by virtue of the unique set of covenants at issue in the present case, Defendants do not have any easement rights in the recreational amenities financed by the recreational amenity charge; they only have easement rights in the common areas, or parks, within Fairfield Harbour. The Master Declaration provides that "the use and enjoyment [of the recreational amenities] shall be on such terms and conditions as FHI, its successors, grantees or assigns, from time to time shall license[.]" Therefore, Defendants merely have a revocable license to use the recreational amenities. We find this to be a key distinction, and hold that in the present case, the covenant to pay amenity fees did not touch and concern Defendants' properties.

Our decision is further supported by *Homeowners Assoc. v. Sellers,* 62 N.C. App. 205, 302 S.E.2d 848, *cert. denied,* 309 N.C. 461, 307 S.E.2d 364 (1983), where our Court dealt with an affirmative covenant for the payment of maintenance assessments in common areas and amenities in which the lot owners had easement rights. In *Homeowners Assoc.,* the plaintiff homeowners' association filed an action against the defendants for unpaid monthly assessments which were required by the subdivision's restrictive covenants. *Id.* at 206, 302 S.E.2d at 850. The restrictive covenants provided that the plaintiff could levy assessments "to provide funds for, among other things, maintenance, landscaping, and beautification of the common areas of the subdivision." *Id.* Importantly, the covenants further provided as follows: "The common areas are all the real property owned by the Association for the use and enjoyment of members of the Association. Every owner has a nonexclusive right and easement of enjoyment in the common areas. The easements are appurtenant to each lot." *Id.*

The trial court found and concluded that the defendants were required to pay the maintenance assessments, and the defendants appealed. *Id.* at 206-07, 302 S.E.2d at 850. However, because the defendants failed to except to any of the trial court's findings of fact and conclusions of law, our Court's review was limited to the questions of "whether the judgment rendered [was] supported by the findings of fact and whether any error of law appear[ed] on the face of the record." *Id.* at 209-10, 302 S.E.2d at 851-52. Because the trial court "found [that] the covenants and restrictions ran with the land, and

[that] [the] defendants were delinquent in paying the required assessments, the judgment obviously was supported by the findings of fact and conclusions of law." *Id.* at 210, 302 S.E.2d at 852.

Nevertheless, our Court went on to state that "[a]lthough not necessary to the disposition of this case, we will briefly address the issues [the] defendants have attempted to raise in their brief." *Id.* Although dicta, our Court's analysis is instructive. The defendants argued that the covenant "[did] not touch and concern the land because some of the recreational facilities, which [were] financed by the maintenance fees, [were] several blocks away from [the] defendants' lots." *Id.* Our Court stated that

> [t]he covenant, however, runs with each lot in the entire subdivision of which [the] defendants' lots are but a small part. The recreational facilities are in the subdivision, for the use of all the people who live in the subdivision. It does not matter that the facilities are not adjacent to each lot, it is sufficient that they touch and concern the entire subdivision.

*Id.* Our Court further stated that "[t]his case is easily distinguishable from *Raintree* because the recreation facilities here are not in a country club, but are actually on the . . . subdivision *for the benefit of lot owners.*" *Id.* at 211, 302 S.E.2d at 853 (emphasis added).

In *Homeowners Assoc.*, the lot owners had easement rights in the common areas, which included some recreational facilities. However, Defendants in the present case do not have easement rights in the recreational amenities; they only have easement rights in the common areas, or parks, within Fairfield Harbour. In *Homeowners Assoc.*, although not explicitly stated, it appears that by virtue of the defendants' easement rights, and because the common areas were therefore "appurtenant to" the defendants' lots, the covenant for payment of assessments to maintain those common areas touched and concerned the defendants' land. *See Homeowners Assoc.*, 62 N.C. App. at 206-11, 302 S.E.2d at 850-53. In contrast, in the present case, the recreational amenities are not appurtenant to Defendants' properties, and therefore, the covenant to pay amenity fees does not touch and concern Defendants' properties.

Plaintiff argues that *Runyon* provides support for its argument that a covenant for maintenance of recreational amenities touches and concerns land within a subdivision if the value of the lots within the subdivision are affected by the maintenance of the recreational amenities. We disagree.

In *Runyon*, the plaintiffs sought to enjoin the defendants from constructing condominiums on their property in violation of a restrictive covenant placed on the defendants' property by the plaintiffs' predecessor in interest. *Runyon*, 331 N.C. at 297-98, 416 S.E.2d at 181-82. In determining whether the plaintiffs were entitled to enforce the covenant, our Supreme Court analyzed the touch and concern requirement. *Id.* at 300-01, 416 S.E.2d at 183-84. The Supreme Court recognized that "the nature of the restrictive covenants at issue in this case (building or use restrictions) is strong evidence that the covenants touch and concern the dominant and servient estates." *Id.* at 301, 416 S.E.2d at 183. The Supreme Court then concluded as follows:

> Considering the close proximity of the lands involved here and the relatively secluded nature of the area where the properties are located, we conclude that the right to restrict the use of [the] defendants' property would affect [the] plaintiffs' ownership interests in the property owned by them, and therefore the covenants touch and concern their lands.

*Id.* at 301, 416 S.E.2d at 184.

Plaintiff makes much of the Supreme Court's language in *Runyon* that for a covenant to touch and concern land, "[i]t is sufficient that the covenant have some economic impact on the parties' ownership rights by, for example, enhancing the value of the dominant estate and decreasing the value of the servient estate." *Id.* at 300, 416 S.E.2d at 183. However, *Runyon* is clearly distinguishable from the present case because it dealt with a negative, rather than an affirmative covenant. While the negative nature of the covenant in *Runyon* was "strong evidence" that it ran with the land, the affirmative nature of the covenant in the present case is strong evidence that the covenant did not run with the land. *See Runyon*, 331 N.C. at 301, 416 S.E.2d at 183; *see also Raintree*, 38 N.C. App. at 670, 248 S.E.2d at 908 (recognizing that "[a]s a result of the common law rule on affirmative covenants, the requirements for a covenant to run are to be more strictly applied to affirmative covenants than negative covenants."). Furthermore, *Runyon* did not deal with a covenant common to an entire subdivision, like the one at issue in the present case. Rather, the covenant at issue in *Runyon* was between two parties with properties in close proximity to one another. Accordingly, *Runyon* does not analogize well with the present case, and does not provide support for Plaintiff's argument.

Both Plaintiff and Defendants also cite *Bermuda Run Country Club v. Atwell*, 121 N.C. App. 137, 465 S.E.2d 9 (1995), where a set of restrictive covenants provided that the Board of Governors of a country club had to approve increases in assessments and club dues. *Id.* at 138, 465 S.E.2d at 11. The plaintiff corporation, which owned and operated the country club, sought a declaration that the restrictive covenants were null and void. *Id.* at 139-40, 465 S.E.2d at 12. The plaintiff argued that the covenants created rights and responsibilities that existed independently of the parties' ownership interests in the land and that the covenants did not run with the land. *Id.* at 142, 465 S.E.2d at 13. However, the defendants argued that the covenants did run with the land, arguing "that the country club is located within a residential community, and thus, the residents' interests in protecting the value of their investment and membership in the club would be substantially impaired and diminished if the covenants were not upheld." *Id.* Our Court held: "The covenants at issue here[] allow the Board of Governors to give or veto approval of increases in assessments or dues of the country club. These covenants are not directly connected with the land in the instant case; therefore, they do not touch and concern the land." *Id.*

In the present case, Plaintiff makes an argument similar to the one rejected by our Court in *Bermuda Run*. In *Bermuda Run*, the defendants argued that "the residents' interests in protecting the value of their investment and membership in the club would be substantially impaired and diminished if the covenants were not upheld." *Id.* However, the Court held that the covenants were not "directly connected with the land[.]" *Id.* Like the defendants in *Bermuda Run*, Plaintiff in the present case argues that if the covenant is not upheld, it will diminish the value of the land in Fairfield Harbour. However, as in *Bermuda Run*, the covenant in the present case, which calls for payment of a recreational amenities charge, is not "directly connected" to Defendants' properties because Defendants merely have a license to use the recreational amenities; those recreational amenities are not appurtenant to Defendants' properties.

For all the reasons stated above, we hold that the covenant to pay amenity fees did not touch and concern Defendants' properties.

## C. Privity of Estate

Defendants do not appear to challenge whether privity of estate existed in the present case. In fact, one set of Defendants concedes

**MIDSOUTH GOLF, LLC v. FAIRFIELD HARBOURSIDE CONDO. ASS'N**

[187 N.C. App. 22 (2007)]

the existence of privity of estate. However, because we hold that the covenant to pay amenity fees did not touch and concern the land, we need not address the issue of privity of estate. *See Raintree,* 38 N.C. App. at 670-71, 248 S.E.2d at 909 (holding that "[s]ince the covenant does not touch and concern the land, an essential requirement is absent and it is not necessary to discuss the question of privity of estate.").

### D.  Conclusion

Because we hold that the covenant to pay amenity fees did not touch and concern Defendants' properties, we hold that the covenant was a personal covenant. As such, the covenant did not run with the land and was not enforceable by Plaintiff, as a successor in interest to the original covenantor. Accordingly, the trial court did not err by granting Defendants' motions for partial summary judgment.

### III.

**[4]** Plaintiff also argues that "if the provision of the Master Declaration providing for payment of the amenity fee is held to be a personal covenant and unenforceable, the 1993 covenants which are premised on the validity of the amenity fee provision of the Master Declaration also should be declared unenforceable." However, it does not appear that Plaintiff made this argument before the trial court. Therefore, this issue is not properly before us. *See Wood v. Weldon,* 160 N.C. App. 697, 699, 586 S.E.2d 801, 803 (2003), *disc. review denied,* 358 N.C. 550, 600 S.E.2d 469 (2004) (recognizing that "a contention not raised and argued in the trial court may not be raised and argued for the first time in the appellate court."). Moreover, because this contention was not assigned as error, this issue is not properly presented for review. *See* N.C.R. App. P. 10(a) (stating: "Except as otherwise provided herein, the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal in accordance with this Rule."). Accordingly, this argument is not properly before us.

Affirmed.

Judges HUNTER and SMITH concur.