NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

MAGNUS LD MACLEOD, *Appellant*,

*v.*

MOGOLLON AIRPARK INC., *Appellee*.

No. 1 CA-CV 22-0012
FILED 3-21-2023

---

Appeal from the Superior Court in Maricopa County
No.  LC2020-000268-001
The Honorable Daniel J. Kiley, Judge, *Retired*

**AFFIRMED IN PART; VACATED IN PART AND REMANDED**

---

COUNSEL

Jeffrey M. Proper, PLLC, Phoenix
By Jeffrey M. Proper
*Counsel for Appellant*

Carpenter Hazlewood Delgado & Bolen, LLP, Tempe
By Gregory A. Stein, Ember Van Vranken
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge David D. Weinzweig joined.

---

**B A I L E Y**, Judge:

¶1          Magnus LD MacLeod appeals from the superior court's judgment affirming in part a final administrative decision of the Arizona Department of Real Estate ("AZDRE").[1] The superior court upheld the administrative dismissal of MacLeod's petition, finding that a 2018 Amendment to the Mogollon Airpark Unit IVB covenants, conditions and restrictions ("CC&Rs") was valid and that MacLeod violated the Amendment. The superior court also granted Mogollon Airpark Inc., ("Association") its reasonable attorneys' fees incurred in responding to MacLeod's motion to reconsider.

¶2          Though we affirm the superior court's award of attorneys' fees to the Association, we vacate AZDRE's final administrative decision and the superior court's judgment affirming in part, reversing in part, and remanding AZDRE's final administrative decision. We remand to AZDRE to enter judgment for MacLeod and against the Association on their competing petitions, consistent with this decision.

### FACTS AND PROCEDURAL HISTORY

¶3          The Airpark is a planned community consisting of a common-area aircraft runway and residential lots and tracts. The Airpark was developed in phases, with a separate CC&R declaration recorded for each phase. Within the Airpark many residential lots have direct access to the common runway, allowing the owner to move a plane directly from a lot onto the runway. But some lots in the Unit IVB development phase do not have direct access to the runway. To allow these lot owners access to the

---

[1] The superior court also reversed the determination that MacLeod's affirmative defenses could not be considered and remanded for consideration of those defenses. No party challenges this decision on appeal.

runway from their property, these lots were first sold with an associated tract that did have runway access.

¶4        MacLeod bought Tract G in Unit IVB from his brother in February 2017.  At first MacLeod did not own an associated lot, but he later bought an undeveloped lot that lacked runway access, though this was not the lot originally sold with Tract G.  When MacLeod bought Tract G it had a 1600 square foot aircraft hangar on it.  After buying Tract G, MacLeod made improvements to the hangar, including adding a kitchen and building a second story deck inside the hangar.  He then began living in the hangar full time.

¶5        In October 2018, property owners in Unit IVB approved and recorded the Amendment to the Unit IVB CC&Rs.  The Amendment was not approved unanimously by Unit IVB lot owners but was passed by three-fourths of the lot owners, the required number of votes under the CC&Rs.  The original CC&Rs contained the land use provision:

> No more than one single-family structure may be erected on any individual lot, provided, however, a separate guest quarter may be constructed without cooking facilities on lots which are 30,000 square feet and above.  For purposes of this provision, a guest house may be constructed as part of an aircraft storage hangar on the lot or on Tracts E through M, inclusive.  Every residential structure shall have an area devoted to living purposes, exclusive of porches, terraces, garages, and guest quarters of not less than 1,200 square feet.

¶6        As relevant here, the Amendment added the following language to the CC&Rs:

> Only one single family structure or combination hangar/house may be erected on a residential lot.  A separate aircraft storage hangar may be erected on lots with access to the airport taxiway system.  A guest house or recreational vehicle storage garage may also be constructed on lots which are 30,000 square feet or more. . . . Tracts E through M are for aircraft storage hangars only. Guest quarters may be constructed as part of an aircraft storage hangar on these Tracts. Guest houses on residential lots, and guest quarters in aircraft storage hangars are for temporary living only and in no case will be used as a permanent residence. For purposes

of this provision, "temporary" means not longer than four months per calendar year.

¶7        Seeking to enforce the Amendment, in December 2018, the Association sent MacLeod a notice that he violated the Amendment by living full-time in the Tract G residence.  MacLeod sent a written response contesting the alleged violation.  Five months later, the Association sent MacLeod a second violation notice.  Then, in October 2019, MacLeod filed a petition with AZDRE, alleging the Association could not enforce the Amendment because it "substantially altere[d]" the CC&Rs and was not adopted with unanimous lot owner approval.  The Association denied the allegations in MacLeod's petition and filed a petition with AZDRE alleging, as relevant here, MacLeod violated the CC&Rs and Amendment because he lived full-time in his Tract G residence.

¶8        The two petitions were consolidated, and a hearing was scheduled before an Administrative Law Judge ("ALJ").  At the hearing, MacLeod, two current Association board members, and a former Association board member testified.  Following the hearing, the ALJ issued a ruling finding the Amendment was properly adopted and enforceable and MacLeod was living full-time in his Tract G residence in violation of the Amendment.

¶9        MacLeod appealed the ALJ's decision to the superior court. *See* Ariz. Rev. Stat. ("A.R.S.") § 12-905(A).  After full briefing and oral argument, the superior court affirmed that the Amendment was validly adopted and that the Association had proven MacLeod violated the Amendment by living in his Tract G residence full time.  MacLeod then timely filed a notice of appeal with this court.  Almost 80 days after the superior court entered its judgment, MacLeod moved in this court to suspend his appeal and revest jurisdiction with the superior court so that he could file a motion to reconsider.  This court granted his motion to suspend and revested jurisdiction with the superior court.  MacLeod then moved to reconsider in superior court.  After responsive briefing, the court denied the motion, awarded the Association its attorneys' fees incurred in responding to the motion and entered a final judgment.

¶10        MacLeod timely appealed, and we have jurisdiction under A.R.S. §§ 12-913 and -2101(A).

## DISCUSSION

¶11        "In reviewing the superior court's decision affirming an administrative order, we engage in the same process as the superior court,

which is to assess whether 'the agency's action is contrary to law, is not supported by substantial evidence, is arbitrary and capricious or is an abuse of discretion.'" *Holcomb v. Ariz. Dep't of Real Est.*, 247 Ariz. 439, 443, ¶ 9 (App. 2019) (quoting A.R.S. § 12-910). In our review, we "decide all questions of fact without deference to any previous determination that may have been made on the question by the agency." A.R.S. § 12-910(F). The interpretation of CC&Rs is a question of law we review de novo. *Powell v. Washburn*, 211 Ariz. 553, 555, ¶ 8 (2006).

## I. The Amendment's temporary living restriction is invalid as a matter of law.

**¶12** MacLeod argues the Amendment is invalid because the original CC&Rs did not provide sufficient notice that the amendment could be imposed. Just before the superior court issued its decision denying MacLeod's motion for reconsideration, our supreme court decided *Kalway v. Calabria Ranch HOA, LLC*, 252 Ariz. 532, 537, ¶ 10 (2022) which directed that an amendment to CC&Rs is invalid when the original CC&Rs did not provide adequate notice of the amendment.

**¶13** Under *Kalway*, even if an amendment to CC&Rs was properly adopted under A.R.S. § 33-1817(A)(1) and the CC&Rs' amendment procedure, it was none the less invalid without the consent of all owners if it was not reasonable and foreseeable considering the original CC&Rs. *Kalway v. Calabria Ranch HOA, LLC*, 252 Ariz. 532, 537, ¶ 10 (2022). That is, the original CC&Rs must give sufficient notice of the possibility of the amendment. *Id.*

**¶14** To determine whether the original CC&Rs gave sufficient notice of an amendment, we "apply an objective inquiry" to determine whether the amendment was within "a homeowner's reasonable expectations" based on the language of the original CC&Rs. *Id.* at 538-39, ¶¶ 15-16 (citation omitted). When interpreting CC&Rs, our primary purpose is "to give effect to the original intent of the parties." *Id.* at 539, ¶ 16 (quoting *Armstrong v. Ledges Homeowners Ass'n, Inc.*, 633 S.E.2d 78 (N.C. 2006)).

**¶15** A general amendment provision in the original CC&Rs, with nothing more, cannot provide proper notice. *Id.* at ¶ 19. The original CC&Rs need not "give notice of the particular details of a future amendment," but must provide "notice that a restrictive or affirmative covenant exists and that the covenant can be amended to refine it, correct an error, fill in a gap, or change it in a particular way." *Id.* at ¶ 17 (citation

omitted).   An amendment cannot be "entirely new and different in character."  *Id.* (quoting *Lakeland Prop. Owners Ass'n v. Larson*, 459 N.E.2d 1164, 1167 (Ill. App. Ct. 1984)).   "[A]ny doubts [are] resolved against the validity of a restriction." *Id.* at ¶ 16 (citing *Armstrong*, 633 S.E.2d at 85).  "If an amendment is invalid, we 'blue pencil' the amended CC&Rs, striking severable provisions." *Id.* at 537, ¶ 8 (quoting *Valley Med. Specialists v. Farber*, 194 Ariz. 363, 372, ¶ 30 (1999)).

¶16         The original CC&Rs provided guest houses could be built on tracts but only guest quarters without a kitchen could be built on larger lots. The Amendment flips this terminology and refers to guest quarters on tracts and guest houses on lots, but it does not specifically address whether a kitchen is now prohibited in tract guest quarters.  MacLeod argues the Amendment prohibits him from having a kitchen and this change was not foreseeable considering the original CC&Rs.[2]  MacLeod failed to make this argument in his opening brief to the superior court, raising it for the first time in his reply brief.  The argument is therefore waived.  *See State v. Lindner*, 227 Ariz. 69, 70, ¶ 3, n. 1 (App. 2010), and we do not address it.

¶17         MacLeod contends the original Unit IVB CC&Rs failed to give sufficient notice of the possibility of the Amendment's temporary living restriction.  The Association concedes that the original "CC&Rs may not have been sufficient to explicitly limit occupancy of such structures to no more than 'four month per calendar year'" but claims that the original CC&Rs' use of the words "guest houses" and "guest quarters" "necessarily impl[ies] a temporal limitation on the occupancy of such structures" and the amendment's restriction is merely a refinement, explaining the temporal restriction.

¶18         The original CC&Rs allowed guest houses and quarters to be built on certain lots and tracts.  The Amendment continues to allow guest houses and quarters but provides that "[g]uest houses on residential lots and guest quarters in aircraft storage hangars are for temporary living only and in no case will be used as a permanent residence" and defines temporary living as "not longer than four months per calendar year."

¶19         The original CC&Rs do not define guest house or quarters, but a guest house is generally "a small house near a larger one, where guests who are invited to the larger house can stay," *Guesthouse*, Cambridge Dictionary,

---

[2] We note that the Association has conceded that the Amendment does not limit MacLeod's right to have a kitchen in his Tract G residence.

https://dictionary.cambridge.org/us/dictionary/english/guesthouse
(last visited March 13, 2023). And guest generally means "[s]omeone who is entertained or to whom hospitality is extended." *Guest*, Black's Law Dictionary (11th ed. 2019). These definitions do not include a temporal limit on guest home occupancy. Guest instead describes the type of structure, reflecting that a guest house is secondary to the main structure. While a guest may come to stay and use the guest house temporarily, there is nothing in the definition of guest house or the original CC&Rs to suggest this is the only permissible use of a guest house. The original CC&Rs did not prohibit a guest house's use as long-term or permanent housing for a family member or as a long-term or permanent rental property; no restrictions existed on the use of guest houses. The Association also argues that because under the original CC&Rs an owner's primary single-family residence was to be separate from a guest home built as part of an aircraft hangar, the original CC&Rs did not intend guest houses to be for permanent full-time occupancy. But this design scheme merely contemplated that guest houses would be a secondary structure and placed no limit on the use of the guest house.

**¶20** Because the original CC&Rs did not provide sufficient notice of the possibility of a future restriction limiting the use of guest houses or quarters to temporary living, and MacLeod did not consent to the amendment, we strike the following language from the Amendment: "Guest houses on residential lots and guest quarters in aircraft storage hangars are for temporary living only and in no case will be used as a permanent residence. For purposes of this provision, 'temporary' means not longer than four months per calendar year." We thus vacate AZDRE's final administrative decision and the superior court's judgment affirming in part, reversing in part, and remanding that decision. Given our resolution of this issue we do not address MacLeod's other challenges to the Amendment.

**II.  The superior court did not err in denying MacLeod's motion for reconsideration and awarding the Association its attorneys' fees incurred in responding to the motion.**

**¶21** MacLeod also challenges the superior court's denial of his motion for reconsideration and the court's award of attorneys' fees to the Association under A.R.S. § 12-349 for its reasonable fees incurred in responding to MacLeod's motion to reconsider. We review the superior court's denial of a motion for reconsideration for an abuse of discretion. *Tilley v. Delci*, 220 Ariz. 233, 238, ¶ 16 (App. 2009). We review the application of A.R.S. § 12-349 de novo, but we accept the superior court's

findings of fact unless they are clearly erroneous. *City of Casa Grande v. Ariz. Water Co.*, 199 Ariz. 547, 555, ¶ 27 (App. 2001).

¶22            MacLeod's motion for reconsideration pressed an argument raised for the first time in his reply brief to the superior court. Because it was not raised in his opening brief, the argument was waived. *See Lindner*, 227 Ariz. at 70, ¶ 3, n. 1. The superior court did not abuse its discretion in denying MacLeod's motion for reconsideration because it raised a waived argument. *C.f. Ramsey v. Yavapai Fam. Advoc. Ctr.*, 225 Ariz. 132, 137, ¶ 18 (App. 2010) ("Generally, we do not consider arguments raised for the first time in a motion for reconsideration."). While there is no time limit to file a motion for reconsideration, *see* Ariz. R. Civ. P. 7.1, the superior court found that motion unreasonably expanded or delayed the proceeding and awarded the Association its attorneys' fees incurred in responding to the motion. *See* A.R.S. § 12-349(A)(3). MacLeod waited almost 80 days after the superior court entered its final judgment to move to stay his pending appeal and file the motion. MacLeod reasoned the delay occurred because "he ha[d] not actually recognized the grounds for the motion until more recently" and he was "awaiting [an] imminent decision from the Arizona Supreme Court." We agree with the superior court that these explanations are unreasonable, and that MacLeod unreasonably expanded or delayed the proceedings. The superior court thus properly imposed attorneys' fees under A.R.S. § 12-349(A)(3).

¶23            MacLeod also argues the superior court failed to properly consider the factors outlined in A.R.S. § 12-350. Section 12-350 requires a court to provide its specific reasons for the award when making an award of attorneys' fees under A.R.S. § 12-349 and provides that the court *may* include the listed factors in its analysis. The superior court made detailed written findings on the reasons for the fee award and though it did not address the factors listed in § 12-350, it was not required to do so.

## III.    We award MacLeod his reasonable attorneys' fees and costs on appeal.

¶24            Both MacLeod and the Association request their attorneys' fees and costs incurred on appeal under paragraph 31 of the CC&Rs and A.R.S. § 12-341.01. Paragraph 31 of the CC&Rs provides that when the Association enforces the CC&Rs against a violating owner, the owner of a lot must pay "all costs incurred in the enforcement" of the CC&Rs. Because we strike a portion of the Amendment and vacate AZDRE and the superior court's finding that MacLeod violated the Amendment, the Association has

not "enforced" the CC&Rs and is therefore not entitled to its attorneys' fees and costs on appeal under paragraph 31.

¶25 Paragraph 31 of the CC&Rs does not apply to an owner who challenges the validity of the CC&Rs. MacLeod is thus also not entitled to his attorneys' fees and costs on appeal under paragraph 31. But as this is an "action arising out of contract" and MacLeod is the successful party, *see* A.R.S. § 12-341.01(A), upon his compliance with Rule 21, ARCAP, we award him his reasonable attorneys' fees and costs incurred on appeal.

## CONCLUSION

¶26 For the above reasons, we affirm the superior court's award of attorney's fees to the Association for its costs incurred in responding to MacLeod's motion to reconsider. But we vacate AZDRE's final administrative decision and vacate the superior court's judgment affirming in part, reversing in part, and remanding AZDRE's final administrative decision. We remand to AZDRE to enter judgment for MacLeod and against the Association on their competing petitions, consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED: AA